**OLIN WATER SERVICES, Performance Products & Services Group, Olin Corporation, a Virginia Corporation, Appellees,**

v.

**MIDLAND RESEARCH LABORATORIES, INC., a Kansas Corporation, Bruce F. Donigan and John W. Garmon, Appellants.**

No. 84–2587.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1985.

Decided Oct. 2, 1985.

**304**

David R. Schlee, Kansas City, Mo., for appellants.

Frederick K. Starrett, Topeka, Kan., for appellees.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

The appellants, Bruce Donigan, John Garmon, and Midland Research Laboratories, Inc. (Midland), their current employer, bring this appeal under 28 U.S.C. § 1292(a)(1) from an order of the district court, 596 F.Supp. 412, granting a preliminary injunction restraining Donigan and Garmon from contacting certain customers and prospects of Olin Water Services (Olin) for a period of one year in accordance with the terms of a covenant not to compete. We conclude that the present appeal is now moot. Accordingly, we dismiss the appeal and remand the case to the district court for further proceedings.

## I. BACKGROUND.

Olin and Midland are both engaged in the water treatment industry. They sell chemicals needed to maintain the proper chemical balance of water used in industrial equipment and provide service to their industrial customers to ensure that the proper balance is maintained.

In April 1973, Olin hired Garmon as a salesman in its Arkansas district. By January 1983, Garmon had risen to the position of regional sales manager, but he was subsequently demoted to district sales manager. Sometime during the spring of 1984, Olin informed Garmon that his district sales manager position had been terminated. Olin offered him a non-sales technical position in Kansas, which he declined because he did not want to transfer outside Arkansas. He accepted a sales position with Midland on May 8, 1984.

Olin hired Donigan as a salesman in May 1978, a capacity in which he remained throughout his employment with Olin. In December 1983, one of Olin's competitors (not Midland) succeeded in luring away an

Olin customer which Donigan had serviced. Olin then terminated Donigan on February 24, 1984, purportedly for unsatisfactory performance. Donigan remained unemployed until May 8, 1984, when he also accepted a sales position with Midland.

In 1978, Olin required all of its employees to sign a certain employment agreement. Garmon and Donigan both signed an agreement which included a covenant not to compete with Olin upon termination of their employment with Olin. On May 8, Olin sent a letter to both Garmon and Donigan reminding them of this agreement. Nonetheless, upon going to work with Midland, Garmon and Donigan immediately began contacting Olin customers. They succeeded in bringing over to Midland the accounts of eight former Olin customers. On May 30, Olin sent another letter to both Garmon and Donigan threatening to take legal action against them if they continued to violate the terms of their covenants not to compete. When Garmon and Donigan allegedly disregarded this notice, Olin instituted this action seeking damages and injunctive relief in the United States District Court for the District of Kansas on August 23, 1984.

The case was subsequently transferred to the Eastern District of Arkansas. The court entered a temporary restraining order in favor of Olin on October 9 and scheduled a hearing on Olin's request for a preliminary injunction. The court analyzed the case under the *Dataphase* factors [1] and, on October 30, 1984, issued a preliminary injunction restraining Garmon and Donigan from contacting Olin customers and "established" prospects for a period of one year. The court ordered Olin to post a $10,000 bond, as required by Rule 65(c) of the Federal Rules of Civil Procedure.

## II. DISCUSSION.

Garmon, Donigan, and Midland now appeal from the order granting Olin preliminary injunctive relief. They contend that the court erred in granting the injunction because Olin did not establish a probability that it would succeed on the merits of its claim. Alternatively, they argue that injunctive relief was barred by Olin's unclean hands.

Before we may address the merits of these arguments, however, we must resolve a threshold issue of mootness. Olin asserts that this appeal is moot with respect to appellant Donigan because the injunction against him expired by its own terms on February 24, 1985.

The mootness doctrine has its origins in the article III case or controversy requirement. *Powell v. McCormack*, 395 U.S. 486, 496 n. 7, 89 S.Ct. 1944, 1950 n. 7, 23 L.Ed.2d 491 (1969). Therefore, a determination that a case is moot deprives a court of jurisdiction.[2] Mootness occurs when the parties "lack a legally cognizable interest in the outcome." *Id.* at 496, 89 S.Ct. at 1951; *Bishop v. Committee on Professional Ethics, etc.*, 686 F.2d 1278, 1283 (8th Cir.1982). Thus, the issue before us is whether the parties lack a legally cognizable interest in a determination by this court of whether the district court properly granted the preliminary injunction. *Cf. Ammond v. McGahn*, 532 F.2d 325, 328 (3d Cir.1976).

We think this question must be answered in the affirmative with respect to both Donigan and Garmon. The preliminary injunctive order sought to preserve the status quo by compelling Donigan and Garmon to abide by the terms of their covenants not to compete, which provided that they would not engage in specified sales-related activities with certain customers and prospects of Olin "for a period of twelve

---

**1.** *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981).

**2.** The mootness doctrine also serves as a check against the unnecessary use of judicial resources, *see American Bible Society v. Blount*, 446 F.2d 588, 595 (3d Cir.1971); Note, *The*

*Mootness Doctrine in the Supreme Court*, 88 Harv.L.Rev. 373, 376 (1974), and against the creation of unnecessary precedent. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 110 (2d ed. 1973).

months after * * * termination [of employment with Olin]."

■ All parties concede that Olin terminated Donigan on February 24, 1984. The preliminary injunction order issued by the court enjoined Donigan until February 24, 1985. We heard oral argument in this case on June 11, 1985, some three and one-half months after the injunction against Donigan expired by its own terms. Because injunctive relief was premised on the contractual agreement between Donigan and Olin, and that agreement has expired by its own terms, there is no possibility of future injunctive relief, preliminary or permanent, being imposed against Donigan on this ground.

■ We also raise, *sua sponte*, the mootness issue with respect to Garmon.[3] The district court determined that Garmon was terminated on July 13, 1984 and thus enjoined him through July 12, 1985, a date subsequent to our hearing this appeal. We review a district court's findings of fact under the clearly erroneous standard. *Anderson v. City of Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985). Based upon our review of the record in its entirety, we conclude that the district court's ruling on the termination date is clearly erroneous.

A review of the pleadings shows that in its original complaint and application for a temporary restraining order, Olin alleged that Garmon was terminated on May 8, 1984 and that the covenant not to compete went into effect on that day. It therefore requested the court to enjoin Garmon from contacting its customers and established

prospects until May 8, 1985. In its proposed findings of fact submitted after the hearing on the motion for a preliminary injunction, Olin acknowledged that Garmon went to work for Midland on May 8. The record further shows that Olin sent Garmon a letter on May 8 reminding him of the covenant not to compete and another letter on May 30 threatening legal action if Garmon continued to violate the terms of the covenant not to compete.

Garmon has consistently maintained the same position. He acknowledged that his last assignment with Olin was from "March 13 to early May 1984" although he had been stripped of all of his sales territory on March 13. He also acknowledged that he began working for Midland on May 8. In addition, we note that William Dial, an Olin executive, testified that Garmon left *active* employment with Olin "in the spring * * * probably in March."

The district court based its finding that Garmon was terminated on July 13 solely on an Olin Termination Benefit Form which listed Garmon's last day of work as July 13, 1984. This is the only evidence that conflicts with the May termination date acknowledged by both parties in various papers filed with the court and there is no other evidence in the record which would support July 13 as Garmon's actual termination date. Moreover, we do not believe that this form actually conflicts with the May termination date. Garmon contends that this form listed July 13 rather than May 7 as his last day of work to reflect payments[4] made to him by Olin under a settlement agreement in exchange for

---

**3.** In its brief, Olin raised the mootness issue only with respect to Donigan and not Garmon. Nonetheless, because mootness relates to the justiciability of a case, and therefore our power to hear the case, we must consider it even though the parties have not raised it. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 7–8, 98 S.Ct. 1554, 1559–60, 56 L.Ed.2d 30 (1978); *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537, 98 S.Ct. 2923, 2927–28, 57 L.Ed.2d 932 (1978). Nor are we deterred by the fact that the parties, in response to questioning from the court in oral argument on the issue of mootness, requested that we decide the case on the

merits. The parties cannot avoid the effect of a mootness determination simply by attempting to stipulate that the court has jurisdiction. *Kremens v. Bartley*, 431 U.S. 119, 134 n. 15, 136, 97 S.Ct. 1709, 1717 n. 15, 1718 (1977); *Bishop v. Committee on Professional Ethics, etc.*, 686 F.2d 1278, 1284 (8th Cir.1982).

**4.** In fact, the document showed that with payments made to Garmon for accrued vacation and normal severance pay, Garmon officially remained on the Olin payroll until December 10, 1984.

which Garmon released an age discrimination and certain other claims he had against Olin. Dial's testimony corroborates this explanation.[5]

■ In sum, there simply is no dispute between the parties that Garmon began work with Midland on May 8, 1984 after being terminated by Olin on May 7.[6] Accordingly, we hold that the district court's finding that Garmon was terminated on July 13, 1984 is clearly erroneous. The injunction should only have been granted until May 8, 1985. Thus, the court erred in enjoining Garmon until July 13, 1985, and we vacate the order to the extent that it enjoined Garmon between May 8 and July 13.

Because the injunctions against Donigan and Garmon, as modified, expired before the appeal came before us, and because no possibility of further injunctive relief exists, this appeal is moot. *See Klein v. Califano,* 586 F.2d 250, 255 (3d Cir.1978) (en banc). The appellants contend that even if the injunctive aspects of the case are moot, this appeal is not moot because they may be able to recover on the injunction bond posted by Olin if we should determine that the district court erred in granting the preliminary injunction.

■ We disagree. The appellants may indeed have a right to recover on the injunction bond, but that issue is not presently before this court. Our sole task in reviewing an order of the district court granting a preliminary injunction is to determine whether the court abused its discretion.[7] *Ferry-Morse Seed Co. v. Food Corn, Inc.,* 729 F.2d 589, 592 (8th Cir.1984); *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 & n. 8 (8th Cir.1981) (en banc); *accord University of Texas v. Camenisch,* 451 U.S. 390, 393, 101 S.Ct. 1830, 1832–33, 68 L.Ed.2d 175 (1981). It is important to emphasize the limited nature of our review. Our task is not to pass final judgment on the underlying issues, but only to ensure that the injunction did not improperly issue on the basis of any clearly erroneous findings of fact or any clear error on an issue of law that may have affected the ultimate balancing of the *Dataphase* factors.

■ Our holding is only that this appeal is moot. The case itself is not moot because Olin still has a claim seeking damages for the appellants' alleged wrongful conversion of eight of its customers and because the appellants claim they should recover on the injunction bond. *See American Bible Society v. Blount,* 446 F.2d 588,

5. In response to direct examination by Olin attorneys, Dial testified at a hearing on September 6, 1984, as follows:

Q. When did Mr. Garmon leave the active employment of Olin Water Services?
A. It was in the spring. I don't have the specific date. But it was probably March.
Q. At that time was there some other agreement with him for a period of time?
A. Yes. We had another agreement with him.
Q. How long was he on the payroll then, if you know?
A. Up until—I can't answer the question precisely. But until very recently he has been on the payroll, up until June perhaps.

6. Even on this appeal, Olin does not dispute this, but merely asserts that the court did not abuse its discretion in making its factual determination.

7. Appellants challenge this standard of review. They cite *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380 (7th Cir.1984), for the proposition that the abuse of discretion standard applies only to appellate review of an order denying a preliminary injunction, but that appellate review of an order granting a preliminary injunction calls for the most careful scrutiny of the court's findings and conclusions. We note, however, that the Seventh Circuit explicitly refused to decide this very proposition. *See id.* at 390–91. The court actually decided only that the "abuse of discretion" standard, when applied in appeals involving preliminary injunctions, requires that an appellate court engage in some "effective" level of review and not simply engage in a perfunctory rubber-stamping of the district court's decision. A review of our cases on this issue reveals that this court has engaged in a broader, less deferential review in appeals in preliminary injunction cases than in, say, appeals from a trial court's evidentiary rulings, notwithstanding that the "abuse of discretion" standard of review is invoked in both instances. *See, e.g., Ferry-Morse Seed Co. v. Food Corn, Inc.,* 729 F.2d 589 (8th Cir.1984); *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir.1981) (en banc).

594–96 (3d Cir.1971). That claim and the appellants' argument that they should recover on the injunction bond as damages caused by the preliminary injunction must first be tried before the district court.[8] The appellants cannot recover on the injunction bond until there has been a final judgment after trial in their favor. *American Bible Society v. Blount,* 446 F.2d at 594–95; *Meeker v. Stuart,* 188 F.Supp. 272, 276 (D.D.C.1960).

It is to no avail to contend that we should address the enforceability of the covenant not to compete at this point because, according to appellant, the district court has already made its determination on the merits of the case. This argument fails because, as the Supreme Court has noted, it essentially (and improperly) "equates 'likelihood of success' with 'success'," *University of Texas v. Camenisch,* 451 U.S. at 394, 101 S.Ct. at 1833, and ignores the functional and procedural differences between preliminary and permanent injunctions:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary injunction hearing, * * * and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits * * *.
>
> \* \* \* \* \*

In short, where a federal district court has granted a preliminary injunction, the parties generally will have had the bene-

fit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy. Thus when the injunctive aspects of a case become moot on appeal of a preliminary injunction, any issue preserved by an injunction bond can generally not be resolved on appeal, but must be resolved in a trial on the merits. Where, by contrast, a federal district court has granted a permanent injunction, the parties will already have had their trial on the merits, and, even if the case would otherwise be moot, a determination can be had on appeal of the correctness of the trial court's decision on the merits, since the case has been saved from mootness by the injunction bond.

*Id.* at 395–96, 101 S.Ct. at 1834.

We do think, without intimating our views on the proper outcome, that the contentions raised by the appellants that the covenants not to compete are fatally overbroad in their scope and that customer contacts are not a legitimate interest to be protected by a covenant not to compete present very close questions. However, the district court issued the preliminary injunction solely on the basis of the *Dataphase* factors and has not made a final determination on the enforceability of the covenants. The final decision on the merits of the claims remain before the district court in connection with claims for damages and other relief by plaintiff and pending claims for damages by defendants for wrongful issue of the injunction. The final determination on the merits will be subject to appeal to this court.

Because the sole issue before us on this appeal, whether the district court abused its discretion in granting the preliminary injunction, became moot when the injunction expired, we must dismiss this appeal

---

8. As the Supreme Court noted in *University of Texas v. Camenisch,* 451 U.S. 390, 393, 101 S.Ct. 1830, 1832–33, 68 L.Ed.2d 175 (1981), a distinction must be drawn between the issue on appeal from the granting of a preliminary injunction, which is merely whether the injunction was properly issued under the *Dataphase* analysis, and the ultimate determination, made after a full trial on the merits, of whether Olin was entitled to enforce the covenants, and, consequently, whether it or the appellants are entitled to recover damages.

as moot and remand the case to the district court for a trial on the merits.