# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 98-1426, 98-3187, 98-3340

_____

| | | |
|---|---|---|
| Lebanon Chemical Corporation, | * | |
| doing business as Lebanon | * | |
| Seaboard Corporation, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the Western |
| United Farmers Plant Food, Inc., | * | District of Missouri. |
| doing business as Farmers AG Center, | * | |
| Inc., | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |
| | * | |

_____

Submitted: April 19, 1999

Filed: June 16, 1999

_____

Before BEAM and HANSEN, Circuit Judges, and KOPF,[1] District Judge.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable Richard G. Kopf, United States District Court Judge for the District of Nebraska, sitting by designation.

A seed processor refused to release a customer's seed until a dispute over invoices unrelated to the seed in question was resolved. The district court[2] issued a preliminary injunction compelling the processor to release the seed, and granted in part and denied in part a motion by the seed processor to compel arbitration over the disputed invoices. We affirm.

## I.    BACKGROUND

United Farmers Plant Food, Inc., (United) buys seed from growers, then stores, processes, and sells that seed to seed wholesalers. Lebanon Chemical Corporation (Lebanon) is such a wholesaler. It purchased Kentucky 31 tall fescue grass seed (seed, or Kentucky 31) from United. Normally, the parties would enter into a large contract for a specific amount of seed. United would buy the seed, then clean, sort, blend, bag, and label the seed[3] and ship it to Lebanon or directly to Lebanon's customer as United received an order.

Both United and Lebanon belong to the American Seed Trade Association (ASTA). The ASTA rules provide for arbitration of any disputes arising from contracts between members before resort to a court of law to settle the argument. All arbitrations are submitted to the American Arbitration Association (AAA) and determined under AAA Commercial Arbitration Rules.

The 1996 harvest of Kentucky 31 was poor, thus seed prices in spring 1997 were much higher than normal. As a result, Lebanon wanted to purchase just enough seed to cover its obligations and have no carryover of the more expensive seed past the spring 1997 selling season. On March 5, 1997, Lebanon entered into contract M-2020

---

[2]The Honorable Russell G. Clark, United States District Court Judge for the Western District of Missouri.

[3]Different customers have different packaging or purity requirements.

with United for 1.25 million pounds of seed for delivery in March and April 1997. It is undisputed that these 1.25 million pounds were delivered to and paid for in full by Lebanon.

Lebanon's customers continued to demand more seed after all of the seed covered by contract M-2020 was shipped or committed to orders received. Rather than enter into another large contract, Lebanon directed United to fill the additional orders from existing Lebanon inventory if possible, then to go to the market on an as-needed basis to purchase, process, and ship the necessary seed to Lebanon's customers. Lebanon would then pay on invoice with a bill of lading indicating shipment to the customer.

Beginning in May 1997, Lebanon received some invoices from United without bills of lading. There are a total of twenty-nine of these disputed invoices. United and Lebanon communicated back and forth the remainder of 1997 in an effort to resolve these disputed invoices. At one point, Lebanon made a partial payment on some of the invoices.

Meanwhile, K-Mart stores, one of Lebanon's customers in 1997, canceled its remaining orders in May and returned approximately 1.25 million pounds of seed to United, who stored the seed for Lebanon. At the end of the 1997 season, the K-Mart seed, together with seed carried over from the previous season, totaled approximately 2.377 million pounds. Additionally, in July 1997, Lebanon entered into another contract (M-2021) with United for two million pounds of seed for delivery in spring 1998. Lebanon paid in full for contract M-2021. Thus at the end of 1997, these two quantities of seed (the contract M-2021 seed and the K-Mart/carry-over seed) comprised approximately 4.3 million pounds of Kentucky 31 held by United for Lebanon. There is no dispute that Lebanon paid in full for this seed.

In January 1998, United refused to release any of the 4.3 million pounds of seed to fill current orders from Lebanon's customers, until Lebanon paid the disputed invoices, essentially holding the paid-for seed hostage. Lebanon then filed suit in district court seeking a preliminary injunction to compel United to release the paid-for seed. United, in return, then filed a demand for arbitration with the AAA, and a motion with the district court to compel arbitration. On January 30, 1998, finding that the disputed invoices did not touch or concern the paid-for seed, the district court issued a preliminary injunction ordering United to turn over the 4.3 million pounds of seed "within ten days of request by plaintiff in such units as are commercially reasonable and practicable and in such condition as is customary or as agreed upon between the parties previously." The court also denied United's motion to compel arbitration. United appeals this order.

United later filed a counterclaim and second motion to compel arbitration. In July 1998, after a two-day hearing, the court ordered arbitration only for those invoices on which Lebanon had made partial payment, but denied the motion with regard to the remainder of the invoices. United appeals the district court's denial of arbitration on the remaining invoices and Lebanon cross-appeals the court's order compelling arbitration concerning the partially paid invoices. The arbitration appeals from the July order were consolidated with United's appeal of the January order granting the preliminary injunction.

## II.    DISCUSSION

### A.    Preliminary Injunction

Initially we note that we have jurisdiction under 28 U.S.C. § 1292(a)(1) to consider this interlocutory appeal of an order granting an injunction.

-4-

United asserts that the district court abused its discretion by issuing the preliminary injunction compelling United to release 4.3 million pounds of seed to Lebanon. United relies on <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey</u>, 726 F.2d 1286 (8th Cir. 1984), for the proposition that once an effective arbitration agreement is found to exist, any injunctive relief would be an improper intrusion into the arbitration process and the independence of the arbitrator. <u>See</u> <u>id</u>. at 1292. We need not explore the scope of <u>Hovey</u>, nor decide the propriety of the district court's preliminary injunction because the issue is moot. "Through the passage of time and the occurrence of irrevocable events, disputes may disappear so that federal courts no longer can grant effective relief." <u>McFarlin v. Newport Special Sch. Dist.</u>, 980 F.2d 1208,1210 (8th Cir. 1992). When this happens, the issue is moot and a federal court has no power to decide the issue. <u>See</u> <u>Beck v. Missouri State High School Activities Ass'n</u>, 18 F.3d 604, 605 (8th Cir. 1994). The seed, which Lebanon had already paid for, has long since been delivered to Lebanon, shipped to Lebanon's customers for resale, and is presumably now growing in various fields and yards across the country. There is nothing that this court could now do to remedy the effects of the injunction even if it were improvidently granted.

United contends that even if the question of the injunction is moot, the appeal is not moot because it may be able to recover on the injunction bond posted by Lebanon if we should determine that the district court erred in granting the injunction. Any right to recover under the injunction bond is not now before this court as the district court retained jurisdiction pending final resolution of all issues. <u>See</u> <u>Olin Water Servs. v. Midland Research Labs., Inc.</u>, 774 F.2d 303, 307 (8th Cir. 1985). Any claim by United that it should recover on the injunction bond must first be tried before the district court. <u>See</u> <u>id.</u> at 308.

## B. Orders Denying and Granting Arbitration

United first appeals the district court's January order denying United's motion to compel arbitration regarding the 4.3 million pounds of paid-for seed. For the reasons stated above, that issue is moot.[4]

We now reach the substance of the dispute. The district court conducted a two-day hearing on the arbitrability of the twenty-nine disputed invoices. The court then ordered the parties to proceed to arbitration on twelve invoices on which Lebanon had made partial payment, and denied arbitration for the remaining seventeen invoices. United appeals that portion of the order denying arbitration, and Lebanon cross-appeals that portion ordering arbitration.

We have jurisdiction under 9 U.S.C. § 16(a)(1)(b) for an appeal of an interlocutory order denying arbitration. We review de novo the district court's decision to grant or deny arbitration. See Nordin v. Nutri/System, Inc., 897 F.2d 339, 344 (8th Cir. 1990). The factual findings of the district court are reviewed for clear error. See id. Arbitration is a creature of contract. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). Without a clear and unmistakable delegation of the question of arbitrability to an arbitrator, the arbitrability of a dispute must be decided by the courts. See id. at 944. The relevant language from Rule XVI(1) of the ASTA Rules states: "[A]ll differences which cannot be amicably resolved . . . arising from a contract started or concluded under these Rules, shall first be decided by arbitration before it can be submitted to a court of law." The general phrase "any controversy" in an arbitration agreement does not satisfy the express delegation required by Kaplan.

---

[4]United claimed that the term "spring 1998" in contract M-2021 allowed it to deliver the seed any time it chose between January 1, 1998, and June 1, 1998. The seed has been shipped and June 1, 1998, is long past. Any determination of the issue would be merely academic.

See McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1194 (8th Cir. 1997). We find that the phrase "all differences" in the arbitration clause at issue here is similarly too general to amount to an express delegation of the issue of arbitrability. Thus it was for the district court to determine arbitrability of this dispute.

Under the language of the arbitration agreement, the parties have a right to arbitration only as to disputes "arising from a contract started or concluded under [the ASTA rules]." The contracts between United and Lebanon contain the language: "This memo is subject to the trade rules of the American Seed Trade Association," thus effectively incorporating the ASTA arbitration provision into contracts between Lebanon and United. The district court properly concluded that there must first be a contract between the parties that is in dispute before any right to arbitration can arise.[5]

To prove a contract, United offered sales memoranda in the form of contracts that it sent to Lebanon, and accompanying invoices. None of these are signed by Lebanon. United first argues that the disputed invoices and memoranda are addenda, or supplemental contracts to contract M-2020, and thus the arbitration clause in M-2020 gives it the right to present all the disputed invoices to an arbitrator. In the alternative, United argues that each memoranda is a separate, valid, and enforceable contract, each providing for arbitration.

Contract M-2020 was for 1.25 million pounds of Kentucky 31. There is no dispute that all of this seed was shipped and paid for. The district court found that contract M-2020 was unambiguous as to the amount of seed it covered and that the contract "in no way suggests that *additional* seed sales are contemplated under contract M-2020." United cannot create a relationship between contract M-2020 and the

---

[5]The district court found contracts existed with regard to the partially paid invoices because, by making payment, Lebanon had acknowledged an agreement.

disputed invoices out of whole cloth simply by claiming that a relationship exists.[6] Thus the district court denied arbitration based on the arbitration agreement contained in contract M-2020.

United argues that once the court found that M-2020 was a valid contract with an arbitration clause, its inquiry should have ended with all issues being sent to arbitration. We disagree. The arbitration agreement provides relief for disputes arising from a contract started under the ASTA rules. Finding a valid contract under the ASTA rules is only the first step of the district court's inquiry. The court must also make sure that the dispute *arises from that contract*. When a court determines arbitrability of a dispute, it looks to more than the mere existence of a valid arbitration agreement. It also measures the scope of that agreement and determines whether the present dispute is included within its reach. See First Options, 514 U.S. at 944-45; Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-95 (8th Cir. 1994).

United asserts that under Fleet Tire Service of North Little Rock v. Oliver Rubber Co., 118 F.3d 619 (8th Cir. 1997), the arbitration clause at issue is broad rather than narrow, and as a result, the question of whether the claim relates to the contract with the arbitration clause is for the arbitrator to decide. United misconstrues the holding of Fleet Tire. In Fleet Tire, this court followed Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59 (2d Cir. 1983), in recognizing a distinction between "narrow" and "broad" arbitration agreements. See Fleet Tire, 118 F.3d at 621. A court deciding arbitrability under a broad agreement leaves for the arbitrator the issue of whether the controversy in question relates to the agreement containing the arbitration clause, i.e., the scope of the clause. See id. However, there are significant differences between the arbitration clause in Fleet Tire and that contained in the ASTA Rules. The agreement in Fleet Tire read in pertinent part: "Any controversy or claim arising out of or relating

[6]None of the disputed invoices reference contract M-2020, and in fact refer to other "contract," numbers, and those "contracts" contained terms different from those in M-2020.

to this Agreement . . . shall be settled by arbitration . . . . The arbitration provided for . . . shall be the exclusive remedy for any dispute between [the parties], as a substitute for any and all legal remedies and proceedings that would otherwise be available to them." Id. at 620. Contrary to United's argument, it is not the phrase "any controversy or claim" which places the Fleet Tire clause in the broad category. The Fleet Tire court expressly relied on the additional and more general phrase "*relating to*" to find that the arbitration clause was broad. See id. at 621. The arbitration agreement in this case has none of the mentioned distinguishing language and is therefore not a broad arbitration clause. Thus we find the district court properly determined whether the disputed invoices arose from contract M-2020.

Since United cannot compel arbitration of the disputed invoices on the basis of contract M-2020, it can do so only if the individual invoices and sales memoranda amount to valid contracts between the parties. From the evidence presented, the district court found that the parties changed their method of entering into a contract because of the volatility of the seed market. The new method provided for a series of smaller contracts. Lebanon would pay United for seed that United procured in the marketplace, processed and shipped to Lebanon's customer to fill an order. The parties did not intend to consummate a contract until United provided Lebanon with a bill of lading showing that seed had been delivered to Lebanon's customer. The disputed invoices were for seed that United purchased, processed, and *placed in inventory for Lebanon*. The disputed invoices did not have bills of lading showing shipment to a customer, and the seed was in fact not shipped to Lebanon's customers. Thus, the unpaid invoices and accompanying memoranda are not contracts between the parties. Without a contract from which the dispute arises, there can be no applicable arbitration clause.

United asserts that the invoices and sales memoranda it sent to Lebanon are sufficient to create valid contracts under Missouri law. United relies on that portion of the Uniform Commercial Code that allows a confirmation sent from one merchant to

-9-

another to satisfy the writing requirement of the statute of frauds.[7]  United argues that, by operation of the statute, Lebanon is bound by the "contracts" because it did not object to them within ten days.  This argument must fail.  The only impact of the statute is to eliminate the statute of frauds as an affirmative defense, a defense Lebanon did not raise.  Without more, a binding contract cannot be created by simply sending documents to a party who then does not respond.  The burden remains on United to establish the existence of the underlying contract evidenced by the writing, and the terms of that agreement.  See Mo. Rev. Stat. § 400.2-201, comment 3.  We agree with the district court that United has not established the existence of a contract from which the unpaid disputed invoices arise.

Lebanon cross-appeals that portion of the district court's order directing arbitration to proceed on the partially-paid invoices.  Lebanon's sole argument is that United's demand for arbitration over the disputed invoices was untimely.  We have no jurisdiction to entertain this appeal.  This court has previously recognized the strong pro-arbitration tilt of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  See Gammaro v. Thorp Consumer Discount Co., 15 F.3d 93, 96 (8th Cir. 1994).  Although interlocutory orders denying arbitration are appealable, interlocutory orders directing arbitration to proceed are not.  See 9 U.S.C. § 16(a)(1), (b)(2); In re Pisgah Contractors, Inc., 117 F.3d 133, 135-36 (4th Cir. 1997).  An order granting arbitration may be appealed if it is a final order or certified by the district court under 28 U.S.C. § 1292(b). The issue of arbitrability in this case is not independent, but rather embedded in the larger action concerning the final disposition of the preliminary

---

[7]Mo. Rev. Stat. § 400.2-201(2) provides:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the [statute of frauds requirement of a writing] against such party unless written notice of objection to its contents is given within ten days after it is received.

injunction and United's remaining counterclaims–issues yet to be resolved by the district court. In <u>Gammaro</u> we adopted a bright line rule "that an embedded proceeding cannot give rise to a final decision subject to section 16(a)(3) review." <u>Gammaro</u>, 15 F.3d at 96. Lebanon's appeal is neither certified by the district court, nor final, thus the order is interlocutory and not appealable for that portion granting arbitration. <u>See</u> <u>id.</u>; <u>Pisgah Contractors</u>, 117 F.3d at 135-36; <u>McDermott Int'l, Inc. v. Underwriters at Lloyds</u>, 981 F.2d 744, 748 (5th Cir. 1993).

## III.  CONCLUSION

For the above reasons, United's appeal of the district court's January order is dismissed as moot, Lebanon's appeal is dismissed for lack of jurisdiction, and the orders of the district court are affirmed.

A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-