# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-2538/2629

_____

Allied Systems, Ltd., a Georgia Limited  *

Partnership; Transport Support, Inc., a   *

Delaware Corporation,     *

     *

    Appellees/Cross Appellants,     *

     *   Appeal from the United States

    v.     *   District Court for the

     *   Eastern District of Missouri.

Teamsters Automobile Transport     *

Chauffeurs, Demonstrators and     *

Helpers, Local 604, Affiliated with the   *

International Brotherhood of Teamsters, *

Chauffeurs, Warehousemen & Helpers   *

of America; Terry Manion; John Thyer,  *

its officers, agents and employees and   *

its members who are employed by     *

plaintiffs Allied Systems Ltd. and     *

Transport Support, Inc., at their     *

Wentzville, Missouri facilities,     *

     *

    Appellants/Cross Appellees.     *

_____

Submitted: April 15, 2002
Filed: September 17, 2002

_____

Before BOWMAN, RILEY, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

Appellants, Teamsters Automobile Transport Chauffeurs, Demonstrators and Helpers, Local 604, Terry Manion (Manion), and John Thyer (Thyer) (collectively, Local 604), appeal a jury verdict in favor of Allied Systems, Ltd. (Allied) and Transport Support, Inc. (TSI) (collectively, Allied-TSI). Allied-TSI operates automobile transportation businesses throughout the United States and Canada. Local 604 is the recognized exclusive representative for Allied-TSI's employees at the Wentzville, Missouri, terminal. Allied-TSI sued Local 604 for breach of the collective bargaining agreement governing the relationship between the parties. The district court[1] granted temporary then preliminary injunctive relief prohibiting Local 604 from conducting a picket line at Allied-TSI's in-bound rail yard main gate, finding the picketing was a disguise for grievances subject to arbitration under the parties' agreement and was effectively a work stoppage. A jury thereafter awarded Allied-TSI $81,000 in damages.

Local 604 appeals the district court's grant of injunctive relief to Allied-TSI before trial, the admission and exclusion of evidence at trial, and the failure to reduce the damage award. Allied-TSI cross-appeals, arguing the district court erred in not awarding attorney fees. We affirm the district court in all respects.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

## I.     BACKGROUND

The parties conducted business at the terminal of the General Motors (GM) plant in Wentzville, until December 1999 when GM transferred Allied-TSI's work at the terminal to another carrier.  At the time of suit, TSI performed releasing and yard functions at numerous GM plants including the Wentzville plant.  Allied is a motor carrier service company that delivers new and used automobiles by truck around the United States and Canada.  Allied and TSI are wholly owned by Allied Automotive Group. Local 604 is affiliated with the International Brotherhood of Teamsters (IBT). Thyer and Manion, respectively, were the Secretary-Treasurer and President of Local 604.

Local 604 and Allied-TSI are signatories to the National Master Automobile Transporters Agreement (NMATA) which contains a mandatory arbitration clause and requires arbitration of labor disputes before unions engage in work stoppages or strikes.  The NMATA provides in Article 7, Section 1:

> The parties agree that all grievances and questions of interpretation arising from the provisions of this Agreement shall be submitted to the grievance procedure for determination.

> The Unions and the Employers agree there shall be no strike, tie-up of equipment, slowdown or walkout on the part of the employees, nor shall the Employer use any method of lockout or legal proceeding without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise.

The NMATA also requires 72 hours written notice before a work stoppage.

On October 7, 1999, Thyer called a strike, pulled all Local 604 members off the job, and set up picket lines.  Thyer alleged the reason for calling the strike was

that Allied's terminal manager, Sam Bledsoe (Bledsoe), refused to meet with him earlier that day concerning a dispatch issue, in violation of the contractual grievance procedure. Trial testimony showed Bledsoe did not refuse to meet with Thyer, but instead requested that Thyer first make an appointment.

Trial evidence suggested an improper purpose motivated Local 604 to institute the October strike. In the month before the October strike, Lowery Gray (Gray), Local 604's union steward, was discharged for threatening to kill one of Allied-TSI's administrative employees. After procedural questions arose concerning Gray's termination, Allied-TSI rescinded the discharge and ordered a second discharge a day later for separate allegations of assault and destruction of company property. In discussing this matter with an Allied-TSI executive, Thyer threatened to shut Allied-TSI down if it took any action with respect to Gray. Gray was discharged nonetheless on September 27. Local 604 filed a grievance on Gray's behalf and hired him as a business agent, allowing Gray continued access to the terminal.

On October 4, a hearing was held on Gray's dismissal in accordance with the NMATA provisions. On October 6, Allied-TSI obtained a restraining order preventing Gray from entering Allied-TSI's premises, but the order was promptly dissolved for lack of proper notice. On October 7, Thyer and Gray returned to the terminal and Thyer announced he was shutting the terminal down and pulled all Allied-TSI employees off the job.

No provision under the NMATA authorized the October strike, nor did Local 604 provide the 72-hour written notice required by the NMATA. Allied-TSI sent written notice to Local 604 and IBT on October 7 of its willingness to meet, but received no response. After the strike began, Allied-TSI filed for injunctive relief against Local 604. Before the hearing on the motion for temporary restraining order,

Local 604 agreed to terminate the strike without discussing the substance of the dispatch problem that had allegedly led to the strike.

The failure to provide Allied-TSI with the contractually required 72-hour advance notice of the strike damaged the company's operations. Allied-TSI was unable to schedule an alternative dispatcher, creating a backlog in automobiles needing to be transported. The backlog lasted for the remainder of the year and forced GM to divert vehicles away from the Wentzville terminal.

In December 1999, Allied-TSI obtained a new state court injunction barring Gray from entering the Wentzville terminal. Local 604 received a copy of the injunction on either December 20 or 21. On December 21, 1999, Local 604 established a picket line at the in-bound rail yard serviced by the Wentzville terminal. Local 604 notified Allied-TSI of the picketing in advance. The picketing continued for three days. Local 604 claimed this was permissible area standards picketing, protesting substandard wages and benefits against a third party, the St. Louis Auto Auction, which operated at the same terminal as Allied-TSI.

The picket line was located where Allied-TSI employees were required to enter for work. Treating the picket line as a legitimate area standards picketing, Allied-TSI set up a reserve gate where Allied-TSI employees could enter and exit without having to cross the picket line. The reserve gate was created to allow Local 604 to picket St. Louis Auto Auction without interfering with the business of Allied-TSI. When asked to honor the reserve gate, Thyer stated that he would be "shutting the entire yard down." Local 604 then refused to honor the reserve gate and the entire Wentzville terminal was shut down. No Allied-TSI employees crossed the picket line to perform normal duties at the rail yard.

Allied-TSI sent letters to Local 604 and IBT requesting that the December work stoppage be terminated and inquiring whether it was an IBT authorized strike, but no response was received. Allied-TSI obtained a temporary restraining order on December 23, and a preliminary injunction on December 29, prohibiting Local 604 from engaging in the work stoppage in violation of the NMATA's mandatory grievance and arbitration provisions. Local 604 ended the strike. The district court ordered Local 604 and Allied-TSI to submit to arbitration.

Allied-TSI claims the December work stoppage significantly damaged business by increasing the severity of the already existing backlog from the October work stoppage, causing GM to divert more vehicles, and decreasing the efficiency of business generally. Allied-TSI sought damages sustained as a result of Local 604's breach of the NMATA and also requested a permanent injunction prohibiting Local 604 from engaging in further work stoppages, strikes, tie-ups, or picketing in violation of the NMATA. After a jury trial, the district court granted Allied-TSI's motion to dismiss its request for permanent injunctive relief on the ground of mootness.

At trial, Allied-TSI offered into evidence the temporary restraining order and preliminary injunction, which were partially read to the jury. Local 604 made no objection to this admission of the orders. The union instead requested that the district court read the jury more of one order. Local 604's request was sustained and the full document was admitted into evidence.

Before trial, Allied-TSI filed a motion in limine to exclude from evidence all written decisions of all arbitrators. The district court deferred ruling on the motion, noting it was "unable at this time to determine whether the issues regarding the arbitrated disputes and grievances will be relevant," and it would "make rulings at the time such matters are presented." The court did prohibit any mention of the matters

in voir dire and in opening statements. Local 604 made no attempt to offer into evidence the Board of Arbitration's decisions pursuant to the district court's December order that the parties submit to arbitration. Local 604 offered the Board of Arbitration's written decisions concerning Gray's termination, and Allied-TSI objected. The district court sustained the objection and excluded the arbitrators' decisions due to (1) the difference in opinion as to the meaning of the documents, (2) the likelihood the documents would "be confusing to the jury" and would force "the jury [to] interpret these legal documents," and (3) the risk a "series of mini-trials" could occur. The court allowed witness testimony as to Gray's violent proclivities, the state court restraining order enjoining Gray from entering the premises, and the general outcome of the arbitration.

The district court permitted Allied-TSI's internal accountant and Vice President of Internal Audit, Harpal Grover (Grover), to testify as a lay witness regarding Allied-TSI's damages. Grover was not present during the work stoppage, but testified as to his personal knowledge of the company's books and financial status.

A jury awarded $81,000 in damages to Allied-TSI on February 16, 2001. The district court denied Local 604's motion for a new trial and denied Allied-TSI's motion for attorney fees.

## II.    DISCUSSION

We first address Local 604's contentions concerning the restraining order and preliminary injunction, then the evidentiary issues, and finally the damages award. We will conclude with Allied-TSI's motion for attorney fees.

## A.    Temporary Restraining Order and Preliminary Injunction

Local 604 delayed its appeal of the temporary restraining order and preliminary injunction until after the district court issued a final judgment, instead of bringing an interlocutory appeal as a matter of right.  A party may choose to pursue an interlocutory appeal of a district court's grant of preliminary injunctive relief or to wait until after a final judgment has been rendered. Sierra Club v. Robertson, 28 F.3d 753, 756 n.3 (8th Cir. 1994).

Federal appellate jurisdiction extends only to actual cases or controversies still in existence at the time of appellate review.  U.S. Const. art.  III, § 2; Ashley, Drew & N. Ry. Co. v. United Transp. Union, 625 F.2d 1357, 1361 (8th Cir. 1980).  After the district court enjoined the December 1999 work stoppage, GM transferred all of Allied-TSI's work at the Wentzville terminal to another carrier.  Allied-TSI no longer does business with Local 604 at the Wentzville terminal.  We need not explore the propriety of the temporary restraining order and preliminary injunction enjoining the December 1999 picketing because the issue has become moot "[t]hrough the passage of time and the occurrence of irrevocable events." Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.,  179 F.3d 1095, 1099 (8th Cir. 1999) (quoting McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210 (8th Cir. 1992)).

## B.    Evidentiary Rulings

We will not set aside a jury verdict unless the district court clearly and prejudicially abused its discretion in determining whether or not to admit evidence. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1080 (8th Cir. 2000).

Local 604 contends the temporary restraining order and preliminary injunction are not moot because Allied-TSI read portions of both documents to the jury, and the union believes this evidence prejudiced the rights of Local 604 and constituted plain

error.  However, Local 604 made no objection to the inclusion of this evidence at trial.  Local 604 asked the district court to read more of one of the orders.  The union also referred to this evidence throughout the trial.  Local 604 had the opportunity to present the district court with a proposed jury instruction to clarify the meaning of these preliminary remedies – but did not.

Because of Local 604's failure to object to this evidence, we only review for plain error.  Chem-Trend, Inc. v. Newport Indus., Inc., 279 F.3d 625, 629 (8th Cir. 2002).  Our review under the plain error standard is "narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." Id. (citation omitted).  We will only reverse if the error prejudiced the substantial rights of Local 604 and would result in a miscarriage of justice.  See id.  We find no miscarriage of justice and no plain error.

Local 604 also argues the district court abused its discretion in excluding from evidence two decisions issued by the Board of Arbitration in response to the district court's order requiring the parties to submit to arbitration.  However, Local 604 never offered the decisions.  The district court denied Allied-TSI's motion in limine to exclude this evidence, opting to "make rulings at the time such matters [we]re presented." Local 604's failure to offer the Board's decisions cannot be characterized as plain error on the part of the district court.  See Dupre v. Fru-Con Eng'g Inc., 112 F.3d 329, 337 (8th Cir. 1997).

After carefully scrutinizing the record, the only arbitration decisions we find Local 604 offered were documents relating to the dismissal of Gray.  The district court correctly determined the admission of the arbitrators' decisions as to Gray would confuse the jury and waste time by focusing the jury's attention on irrelevant issues.

The district court denied Local 604's motion to exclude the statements concerning Gray's conduct and termination, which we review for a clear abuse of discretion.  See Spencer v. Stuart Hall Co., 173 F.3d 1124, 1130 (8th Cir. 1999). Local 604 argues evidence of Gray's threats of violence against Allied-TSI employees was not relevant evidence under Rules 401 and 402.  Evidence of Gray's termination and Local 604's reaction to the termination is probative of the true reason for the October and December work stoppages.  This evidence was relevant to assist the jury in determining whether the work stoppages were a breach of the NMATA. Accordingly, the district court did not abuse its discretion in admitting this evidence.

Local 604 contends it was also a clear abuse of discretion for the district court to permit Grover, the Vice President of Internal Audit at Allied-TSI, to testify as to damages under Rule 701 of the Federal Rules of Evidence.  Grover had not been disclosed as an expert before trial.  Local 604 argues Grover used accounting principles and methods to quantify damages, and therefore impermissibly used specialized knowledge, which can only be used by expert witnesses.  Grover's testimony was limited to his firsthand knowledge, obtained as the bookkeeper and record-keeper at the Wentzville terminal and from a field audit he conducted within weeks of the first work stoppage.  "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience is a sufficient foundation for lay opinion testimony." Burlington N. R.R. Co. v. Nebraska, 802 F.2d 994, 1004-05 (8th Cir. 1986).  The opinion testimony of an officer of a business as to value or projected profits or as to damage to the business, without qualifying the officer as an expert, "is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business."  Fed. R. Evid. 701, advisory committee's note (2000).  We find no abuse of discretion in the district court's inclusion of Grover's testimony.

## C.    Damage Award

Local 604 also argues the damage award was excessive.  We will reverse an award of damages only if it is "shocking, monstrous, or constitute[d] a plain injustice."  Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001) (citation omitted) (alteration in original).  The jury's damage award of $81,000 against Local 604 was reasonable and rationally connected to evidence presented at trial.  Allied-TSI presented evidence that the October work stoppage caused a backlog of vehicles which was then exacerbated by the December work stoppage.  Allied-TSI also put forth evidence of its attempts to mitigate damages by reducing the backlog.  The award was not shocking, monstrous or a plain injustice.


## D.    Attorney Fees

We review the district court's denial of Allied-TSI's motion for attorney fees for an abuse of discretion.  American Fed'n of Musicians v. St. Louis Symphony, 203 F.3d 1079, 1081 (8th Cir. 2000).  Allied-TSI maintains the district court abused its discretion in not awarding attorney fees as an element of damages, because Allied-TSI incurred legal costs in stopping the improper work stoppage and strike.  Attorney fees are typically not recoverable as an element of damages in the absence of  statutory authority, a contractual agreement to award attorney fees, or an equitable determination that a party acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  Id.; see Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247-71 (1975).  The Supreme Court has expressly rejected Allied-TSI's argument that it may recover attorney fees from prior litigation as an element of damages.  See Summit Valley Indus. Inc. v. Local 112, United Bd. of Carpenters & Joiners of Am., 456 U.S. 717, 718-19 & n.1, 725-27 (1982) (expressly rejecting analysis of Associated Gen. Contractors of Minn. v. Constr. & Gen. Laborers Local No. 563, 612 F.2d 1060, 1061-64 (8th Cir. 1979), which characterized award of attorney fees from prior related lawsuit as compensatory damages).  The district court did not abuse its discretion in denying Allied-TSI's motion for attorney fees.

## III.    CONCLUSION

The appeal of the temporary restraining order and preliminary injunction has become moot through the passage of time and the occurrence of irrevocable events. The district court did not abuse its discretion in ruling on the evidentiary matters or in refusing to award attorney fees.  The damage award was reasonable.   Accordingly, we affirm.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-