# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3238

_____

| | | |
|---|---|---|
| United Steelworkers of America, AFL-CIO-CLC, | * * * | |
| Appellant, | * * | Appeal from the United States District Court for the District |
| v. | * * | of Minnesota. |
| The Duluth Clinic, Ltd., a Minnesota Corporation, | * * * * | |
| Appellee. | * | |

_____

Submitted: May 13, 2005
Filed: July 7, 2005

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The United Steelworkers of America (the "Union") seeks arbitration of a dispute with The Duluth Clinic, Ltd., over retiree health insurance benefits. The Union sued, alleging that a collective bargaining agreement compels arbitration. *See* **Labor Management Relations Act § 301(a)**, **29 U.S.C. § 185(a)**. On cross motions for summary judgment, the district court[1] ruled for the Clinic, holding that the dispute

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

was not a "grievance" covered by the arbitration provision. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

On April 1, 2000, the parties entered into five Collective Bargaining Agreements (collectively "CBA"), covering benefits of certain Clinic employees. The CBA required that all unresolved grievances be submitted to arbitration, specifically defining the term "grievance."

On March 27, 2000 – before entering into the CBA – the parties signed a separate letter of understanding. It requires that the Clinic provide retired union unit employees and their spouses – covered under Medicare-Part B – with discounts on medical services. The letter says it was the "result of recent negotiations" and references the CBA. The letter also provides: "In the event any provision or provisions are declared to be in conflict with a law, both parties shall meet immediately for the purpose of renegotiating the provision so invalidated."

On August 1, 2000, the Clinic eliminated the retiree discounts because they did not comply with Medicare law. The parties met to discuss alternatives. On April 12, 2001, the parties agreed that affected retirees could enroll in a separate reimbursement plan in the interim, evidenced by a memorandum from the Clinic to the Union (referred to as the "interim coverage memo"). Despite negotiations to replace the letter of understanding and the interim coverage memo, the Clinic eliminated the interim reimbursement plan, and the parties failed to resolve the dispute.

In June 2002, the Union filed an unfair labor practice charge with the National Labor Relations Board, which was dismissed. An appeal to the General Counsel of the NLRB was denied. The Union then filed a grievance with the Clinic under the CBA, alleging that the Clinic violated "Article 7, Article 27, Letter of Understanding dated March 27, 2000, and Letter of Agreement dated April 12, 2001, pertaining to retirees insurance." When the Clinic responded that there was no "grievance" under

the CBA, the Union filed this action. The district court granted summary judgment to the Clinic, refusing to compel arbitration.

This court reviews de novo the district court's grant of summary judgment. *United Steelworkers of Am., AFL-CIO-CLC, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000). Because the material facts are undisputed, the issue is whether summary judgment is appropriate as a matter of law. *See id.*

When deciding whether to compel arbitration, this court applies a two-part test: "we must first consider whether a valid agreement to arbitrate exists. If a valid agreement exists, we then consider the scope of the agreement." *Id.* at 860 (internal citations omitted). According to both parties, an agreement to arbitrate exists. The only question is whether it covers this dispute. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

The Union asserts that this court should evaluate the "scope" of the arbitration clause under the Ninth Circuit's approach in *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1079-80 (9th Cir. 2002). The Ninth Circuit holds that "disputes arising under a side agreement must be arbitrated if the dispute relates to a subject that is within the scope of the CBA's arbitration clause. . . . [and] [t]he clause contains no exclusion for disputes arising under side agreements." *Inlandboatmens*, 279 F.3d at 1080.

The *Inlandboatmens* case expressly rejects the Second Circuit's approach to determining the arbitrability of side agreements. *See Inlandboatmens*, 279 F.3d at 1079, *citing* ***Cornell Univ. v. UAW Local 2300***, 942 F.2d 138, 140 (2nd Cir. 1991), *applying* ***Rochdale Vill., Inc. v. Pub. Serv. Employee Union, Local No. 80***, 605 F.2d

-3-

1290 (2nd Cir. 1979), *followed by* **Prudential Lines, Inc. v. Exxon Corp.**, 704 F.2d 59, 63 (2nd Cir. 1983).

This court, however, follows the Second Circuit's approach. *See* **Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.**, 118 F.3d 619, 621 (8th Cir. 1997), *following* **Prudential**, 704 F.2d at 63. This court first decides whether the arbitration clause is narrow or broad. *See* **Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.**, 179 F.3d 1095, 1101 (8th Cir. 1999), *following* **Fleet**, 118 F.3d 621. *See also* **Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.**, 252 F.3d 218, 225 (2nd Cir.) (citing *Prudential* and emphasizing the necessity of "making a distinction between broad and narrow arbitration clauses . . . , 'as the scope of an arbitration clause, like any contract provision, is a question of the intent of the parties.'" (citation omitted)), *cert. denied*, 534 U.S. 1020 (2001).

If the clause is narrow, then the court determines "whether the dispute involves an agreement collateral to the agreement containing the arbitration clause." **Fleet**, 118 F.3d at 621. Only if the clause is broad does the court analyze whether the dispute relates to the subject matter of the agreement. *See* **id.**

In this case, Article 12 of the CBA – entitled "GRIEVANCE AND ARBITRATION" – requires all unresolved "grievances" be submitted to arbitration. Article 12 defines the term "grievance" as "any claim by the Union or the Employer, alleging a violation of a specific contract provision or adherence to the terms and provisions of this Agreement."

The Union contends that this clause broadly covers *all* agreements between the parties, reasoning that the phrase "alleging a violation of a specific contract provision" refers to any agreement between them. This contention ignores the plain

language of Article 12. For instance, Article 12.1 provides that the grievance "be reduced to writing specifically listing the article(s) of the Agreement that were allegedly violated . . . ." This limits the grievances that may be processed to those that violate the CBA.

Most importantly, Article 12.2 limits the authority of the arbitrator

> to making an award relating to the interpretation of or adherence to the written provisions of the Agreement and the arbitrator shall have no authority to add to, subtract from, or modify in any way the terms of this Agreement.

If the parties intended arbitration for any agreement between themselves, the authority of the arbitrator would not have been limited to the CBA itself.

The Union emphasizes that Article 12.2 empowers the arbitrator to interpret "the" Agreement. The Union concludes that "the" means any agreement, whereas "this" refers to the CBA. Such reasoning ignores that Article 12 repeatedly uses the term "Agreement" – with a capital "A" – to refer to the CBA. True, capitalization and "the" are used inconsistently in the rest of the CBA. However, Article 12 specifically addresses arbitration and limits it to violations of the CBA, excluding other agreements between the parties (unless otherwise agreed).

Similarly, in *Lebanon Chemical*, this court found an arbitration clause narrow, which required arbitration of all disputes "arising from a contract started or concluded under *these Rules*." **Lebanon Chem.**, 179 F.3d at 1101 (emphasis added) ("these Rules" refers to the American Seed Trade Association Rules, governing arbitration between members). The Second Circuit also found narrow an arbitration clause defining an arbitrable grievance as "any matter involving the interpretation or

application of this Agreement which alleges a violation of the rights of an employee or the Union under the terms of this Agreement." *Cornell Univ.*, 942 F.2d at 140.

In *Fleet*, this court found an arbitration clause broad, which required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement." *Fleet*, 118 F.2d at 620. Unlike *Fleet*, the arbitration clause here contains no such language. *See Lebanon Chem.*, 179 F.3d at 1101 (noting that, in *Fleet*, the key was the phrase "relating to"). *See also Marathon Ashland v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 949 (8th Cir. 2002) (treating arbitration clause as broad that included the phrase "relating to").

The plain language of Article 12 here limits "grievances" to violations of the CBA itself, and lacks the additional language found in broad clauses, such as in *Fleet*. Thus, the district court correctly ruled that the arbitration clause at issue is narrow.

This court next examines "whether the dispute involves an agreement collateral to the agreement containing the arbitration clause." *Fleet*, 118 F.3d at 621, *applying Prudential*, 704 F.2d at 64. "A 'collateral' agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause. The burden is on the party resisting arbitration to demonstrate that the disputed issue is collateral." *Prudential*, 704 F.2d at 64. Arbitration of collateral matters may not be "compelled merely based upon the existence of an arbitration clause in the main agreement." *Id.*, *citing Rochdale*, 605 F.2d at 1296-97.

The Union alleges that the Clinic breached the agreement to provide benefits and discounts to certain retired Clinic employees. This agreement is documented in a letter of understanding of March 27, 2000, and the subsequent letter, the interim

coverage memo of April 12, 2001.[2] The letter of understanding predates but references the CBA by making it subject to the CBA's savings clause. The interim coverage memo does not mention the CBA, stating only that the Clinic "will continue to honor the program that is in place at this time for those USW employees that retire between this date and the date at which [the Clinic] and the USW mutually agree to a program that replaces that program."

The Second Circuit in *Cornell University* – after finding a similar arbitration clause narrow – addressed whether a separate letter of understanding entered into after the collective bargaining agreement was collateral:

> The question that must be answered is whether the letter may be read as part and parcel of the Collective Bargaining Agreement or whether it is collateral to it. If the letter is to be construed as a collateral instrument it may be parallel or coordinate to the Collective Bargaining Agreement, but it must be dissimilar and by definition be a contract set apart and distinct from the Agreement. *See* Webster's *Third New International Dictionary* (1981).

*Cornell Univ.*, 942 F.2d at 140. The court then refused to compel arbitration, finding that the dispute arose under a letter distinct and apart from the main agreement, and that the parties did not intend to incorporate the letter into the main agreement. *Id.*

In this case, the CBA limits arbitration solely to violations of its terms. Only the letter of understanding and the interim coverage memo address retiree insurance

---

[2] When the Union originally filed its grievance with the Clinic it alleged violations of the CBA's Articles 7 – the savings clause – and 27 – waiver of fringe benefits inconsistent with the CBA. However, in its briefs to this court, the Union does not claim a breach of these specific provisions. It asserts an arbitrable grievance based only upon the letter of understanding and interim coverage memo.

benefits or discounts, creating an obligation separate and distinct from the CBA. *See id.* Further, nothing in the CBA, the letter of understanding, or the interim coverage memo evidences an intent to incorporate those separate agreements into the CBA. Therefore, the present dispute is collateral and not subject to arbitration.

The judgment of the district court is affirmed.

———————————————