# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-3563

_____

MidAmerican Pension and Employee Benefits Plans Administrative Committee

*Plaintiff - Appellee*

v.

Michael G. Cox, Sr.; Joleen Cox

*Defendants - Appellants*

Kathy L. Cox

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 9, 2013
Filed: July 12, 2013

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Michael G. Cox, Sr., and Joleen Cox (collectively Parents) appeal from the district court's[1] adverse grant of summary judgment. They argue that the district court erred in concluding that the antenuptial agreement between their son, Michael G. Cox, II (Michael), and his then-wife, Kathy L. Cox (Kathy), was ineffective to waive Kathy's right to the funds in Michael's 401(k) plan. We affirm.

## I. Background

Michael and Kathy twice married and divorced between 1997 and 2004. On September 23, 2004, while unmarried, Michael designated his Parents as beneficiaries of his MidAmerican Energy Corporation (MEC) 401(k) plan (MEC 401(k) Plan), in which he participated while employed at MEC. Thereafter, Michael and Kathy decided to marry a third time. They executed an antenuptial agreement on February 19, 2010, before marrying on March 6, 2010. They reexecuted the same antenuptial agreement on March 26, 2010. Both Michael and Kathy signed the antenuptial agreement before and after the wedding, and their signatures were notarized. Section A(3) of the antenuptial agreement reads:

3. <u>INTENT OF THE PARTIES</u>.

The parties intend, and each party hereby specifically does waive and release any and all rights and claims of every kind, nature, and description that he or she may have, or to which he or she may be entitled with respect to any of the separate property of the other party in the event of the termination of this marriage by either death or operation of law, including but not limited to rights of inheritance, spousal allowance, property division, and rights of dower, curtesy, and other inchoate marital rights.

---

[1]The Honorable Thomas J. Shields, then Chief United States Magistrate Judge for the Southern District of Iowa, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

Upon the termination of the marriage contemplated herein, neither party shall have any right to support from the other party and no rights in or to the separate property of the other party, as described in Exhibits "A" or "B" or otherwise, or any replacement property, or any additional property belonging to the other party. The parties agree to accept the provisions of this Agreement in lieu of and in full discharge, settlement, and satisfaction of all rights and claims each may have in or to the property of the other party at any time, now or in the future.

The MEC 401(k) Plan is listed among Michael's assets in the attached Exhibit "A." Sections B(1), (3), and (8) of the antenuptial agreement read, in relevant part:

1. DESIGNATION OF SEPARATE AND COMMON PROPERTY.

 a. The property described in Exhibit "A" of this Agreement, including property acquired from proceeds thereof, or any replacement property, or any additional property belonging to Husband, shall be the sole and separate property of Husband. Wife hereby disclaims any and all right, title and interest therein arising by operation of the intended marriage of the parties, except as such may be granted to her by this Agreement, or by any subsequent instrument, including but not limited to a Will or Living Trust, executed by Husband.

 b. In the event of an annulment, separation, dissolution of the marriage, or any other legal or other termination of the marriage relationship herein contemplated, Wife hereby disclaims any and all rights to any of the property as set forth in Exhibit "A," or any property acquired from proceeds thereof, or any replacement property, or any additional property belonging to Husband.

 . . . .

 g. Any retirement benefit, account or right, including any distributions or other payments to a party and any increase in such benefit or account during the term of the marriage, either by

-3-

contributions, earnings or appreciation whether the Participant or others make investment decisions ("Retirement Benefit"), will be the separate non-marital property of the party who is the participant or owner of the benefit or account (the "Participant"), except as otherwise specifically provided in this Agreement. Each of the parties agree that they will not seek the imposition of any Qualified Domestic Relations Order or other Order which would attempt to assign any rights in the Retirement Benefits from the Participant to the non-participant party. The Participant will receive 100% of the Retirement Benefit and the non-participant party will receive none of the Retirement Benefit, regardless of when it is paid.

. . . .

3.      DISPOSITION OF SEPARATE PROPERTY.

Each party may make any disposition of his or her property, as the case may be, by gift, inter vivos trust, retirement beneficiary designation, or Will during his or her lifetime, provided that this clause shall not apply to property owned by the parties hereto as joint tenants with full rights of survivorship.

. . . .

8.      RETIREMENT PLANS AND INDIVIDUAL RETIREMENT ACCOUNTS.

a.      To the extent that either party is entitled to benefits receivable under a retirement plan or individual retirement account, subject to the terms of the Employee Retirement Income Security Act (ERISA) as now existing or hereafter amended, 29 USCS §§ 1001-1461, which require joint and survivor annuities, pre-retirement survivor annuities, or any other similar benefit, the other party hereby irrevocably consents to the participant employee's change in beneficiary or change in the form of

-4-

payment of benefits without further consent by the non-participant spouse.

b.    The non-participant spouse hereby specifically agrees to consent in writing with his/her signature duly witnesses [*sic*] by a notary public in any election by the Participant to waive any and all forms of survivor benefits, specifically including, but not limited to, any Pre-Retirement Survivor Annuity and Joint and Survivor Retirement Annuity Waivers and Beneficiary Designations. The non-participant spouse shall complete any such consents to any waivers of these benefits at any such time as requested by the Participant, whether currently or at any time in the future.

c.    Wife hereby specifically agrees to properly execute a waiver concerning Husband's retirement plan in the witness of a notary public at any time upon Husband's request following the marriage of the parties.

Michael filed a Petition for Dissolution of Marriage on May 4, 2011. The petition included the following statement: "The parties signed an Antenuptial Agreement on February 19, 2010, re-executing it on March 26, 2010. The Petitioner is requesting a division of assets and debts pursuant to the Antenuptial Agreement."

Michael died on May 21, 2011—before his divorce from Kathy was finalized and more than a year after he and Kathy had been married. After Michael's death, his Parents and Kathy disputed who was to receive the funds in the MEC 401(k) Plan. On August 2, 2011, MEC sent Kathy a letter stating that, among other things, it believed that the Parents were entitled to the funds in the MEC 401(k) Plan and asking Kathy to sign a waiver to any rights thereto in accordance with paragraph 8 of the antenuptial agreement.

After Kathy refused to sign a waiver, MEC filed an interpleader action against Kathy and the Parents, seeking a determination of the proper recipient of the funds

in the MEC 401(k) Plan. On summary judgment, the district court determined that the antenuptial agreement was not effective to waive Kathy's survivor rights to the MEC 401(k) Plan because of a lack of acknowledgment and that as a result, Kathy was entitled to the funds therein.

## II. Discussion

We review *de novo* the district court's grant of summary judgment, "applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 509 (8th Cir. 2011) (quoting Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Cos., 465 F.3d 900, 903 (8th Cir. 2006)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that ERISA, as amended by the Retirement Equity Act of 1984 (REA), Pub. L. No. 98-397, 98 Stat. 1426 (1984), governs the distribution of the funds in the MEC 401(k) Plan. "The principal object of [ERISA] is to protect plan participants and beneficiaries." Boggs v. Boggs, 520 U.S. 833, 845 (1997). The relevant statutory provision, § 1055, provides that "a qualified preretirement survivor annuity shall be provided to the surviving spouse" of a vested plan participant who dies before the annuity starting date. 29 U.S.C. § 1055(a)(2). The Supreme Court has explained that § 1055 reflects Congress's intent "to ensure a stream of income to surviving spouses." Boggs, 520 U.S. at 843; see also S. Rep. No. 98-575, at 12 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2558 ("The committee believes that it is appropriate to provide automatic survivor benefits to the spouses of vested participants.").

A plan participant "may elect at any time during the applicable election period to waive the . . . qualified preretirement survivor annuity form of benefit[.]" 29 U.S.C. § 1055(c)(1)(A)(i). Such an election takes effect only if:

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public[.][2]

Id. § 1055(c)(2)(A).

The parties dispute whether Kathy's rights under § 1055(a)(2) to the MEC 401(k) Plan yield to Michael's designation of his Parents as beneficiaries. For Michael's designation to control, Kathy must have waived her rights in accordance with § 1055(c)(2)(A). The Parents argue that Kathy did so in the antenuptial agreement. Kathy contends that the antenuptial agreement did not satisfy § 1055(c)(2)(A) because she did not waive her rights to the MEC 401(k) Plan and because, if she did waive such rights, she did not acknowledge the effect thereof. The district court concluded that Kathy's consent did not satisfy the acknowledgment requirement of § 1055(c)(2)(A)(iii). We agree.

To be sure, the antenuptial agreement contains several broad waiver provisions regarding retirement accounts, both generally and the MEC 401(k) Plan specifically, by incorporation of an attached exhibit. Section B(8)(a), for example, expressly disclaims, "[t]o the extent that either party is entitled" to them, the right to benefits

---

[2]Although it is not included in the record, the district court's order indicates that the MEC 401(k) Plan incorporates at least some of the requirements of § 1055(c)(2)(A). See D. Ct. Order of Oct. 19, 2012, at 4.

-7-

receivable under a retirement plan governed by ERISA requiring a preretirement survivor annuity.

As a whole, however, the antenuptial agreement is equivocal whether Kathy waived her rights at all. Sections B(8)(b) and (c) of the antenuptial agreement contemplate the future execution of a waiver or consent to change in beneficiary. The inclusion of these sections suggests that Kathy did not waive her spousal rights in the antenuptial agreement because, as the district court recognized, were the antenuptial agreement itself a sufficient waiver, "then Subparagraphs (b) and (c) should not have been included in the agreement." D. Ct. Order of Oct. 19, 2012, at 12; see also Restatement (Second) of Contracts § 203(a) (1981) (explaining that "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). In light of this promise to execute a waiver and in the absence of the fulfillment of this promise, Kathy could not have meaningfully acknowledged the effect of any waiver of her spousal rights in the antenuptial agreement. See Pedro Enters., Inc. v. Perdue, 998 F.2d 491, 494 (7th Cir. 1993) (explaining that ERISA's acknowledgment requirement "reflect[s] the concern that any waiver be knowing and considered").

Moreover, and as the district court noted, notwithstanding its lengthy above-recounted provisions, the antenuptial agreement failed to inform Kathy—in clear and express terms—that she both had a spousal right to receive the funds in the MEC 401(k) Plan and that she was waiving this right. Section B(8)(a), for example, is couched by the equivocal language, "[t]o the extent that either party is entitled to benefits receivable under a retirement plan[,]" and fails to make clear that, by executing the waiver, Kathy would not receive the funds to which she would otherwise be entitled in the MEC 401(k) Plan. See Hurwitz v. Sher, 982 F.2d 778, 781 (2d Cir. 1992) (antenuptial agreement stating that "each party hereby waives . . . any and all rights . . . which may arise by reason of the marriage between the parties . . . with respect to any property . . . as fully as though the parties had never married"

failed to satisfy the acknowledgment requirement); <u>Lasche v. George W. Lasche Basic Ret. Plan</u>, 870 F. Supp. 336, 338 (S.D. Fla. 1994) (form did not satisfy acknowledgment requirement because it did not "describe or explain the right that the spouse [was] giving up (i.e. to get all the money in the account)" and made "no affirmative statement that the spouse [was], in fact, giving up any right at all, since the waiver use[d] such language as 'rights I may have'"), *aff'd on other grounds sub nom.* <u>Lasche v. George W. Lasche Basic Profit Sharing Plan</u>, 111 F.3d 863 (11th Cir. 1997).

"[A]ny waiver of retirements benefits by a spouse must strictly comply with the consent requirements set forth in ERISA." <u>Lasche</u>, 111 F.3d at 867. "[T]he formalities required in § 1055(c) are included to protect against the risks of a spouse's unwitting waiver of [the spousal rights conferred by § 1055(a)]." <u>Hagwood v. Newton</u>, 282 F.3d 285, 290 (4th Cir. 2002) (citation omitted). Given ERISA's strict compliance requirements, we conclude that the antenuptial agreement did not contain an acknowledgment by Kathy sufficient to satisfy § 1055(c)(2)(A)(iii). Accordingly, Michael's designation of his Parents as beneficiaries of the MEC 401(k) Plan must yield to Kathy's rights as surviving spouse.

### III.  Conclusion

The judgment is affirmed.

_____