# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3716

_____

Kennith McDowell; Robert Maulding; Luther Stripling; Rudy Kyle; Fred Dollar; James Joslin; James Milner; Daniel Stripling; Janet Stripling; David Ellis; Joe Ellis

*Plaintiffs - Appellants*

v.

Elbert Price, individually and as Trustee for Bud Price's Excavating Service, Inc. Profit Sharing Plan, Bud Price's Excavating Service Inc. Retirement Plan, Price's Utility Contractors, Inc. Retirement Plan and for six unnamed plans; Mary Ruth Price, individually and as Trustee for Bud Price's Excavating Service, Inc. Profit Sharing Plan, Bud Price's Excavating Service Inc. Retirement Plan, Price's Utility Contractors, Inc. Retirement Plan and for six unnamed plans (Plans A-F); Bud Price's Excavating Service Inc. Profit-Sharing Plan; Price's Utility Contractors Inc. Retirement Plan; Price's Utility Contractors Inc., as plan administrator for Price's Utility Contractors, Inc. Retirement Plan; Bud Price's Excavating Service Inc., as plan Administrator of Bud Price's Excavating Service Inc. Profit-Sharing Plan; Bud Price's Excavating Service Inc. Retirement Plan; six unnamed plans (Plans A-F)

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 9, 2013
Filed: September 24, 2013

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This should have been a straightforward case.  There was no dispute that the plaintiffs were entitled to benefits from the retirement plans administered by the defendant companies.  There was no dispute that the defendants failed to provide the notice required under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*.  The dispute in this case should have been over the amount of benefits and penalties owed to each plaintiff.  Instead, the case remained on the district court[1] docket for four years, growing to almost six hundred docket entries.  Despite extensive litigation, the plaintiffs never set forth their calculation of benefits and did not explain how the failure to provide notice justified their request of $878 million in penalties.  Magistrate Judge H. David Young characterized the plaintiffs' pleadings as "long on sweeping allegations and short on factual support" and then undertook the Herculean task of sorting out the ongoing discovery disputes and assessing the plaintiffs' claims and supporting evidence, ultimately recommending that the plaintiffs' motion for summary judgment be granted in part and denied in part and that the defendants' motion for summary judgment be denied.

The district court adopted Judge Young's recommended dispositions, which together set forth which plaintiffs were enrolled in each plan, which plaintiffs were entitled to penalties, the amount of benefits and penalties owed to each plaintiff, and the amount of attorney's fees and costs the defendants should pay.  The plaintiffs appeal, raising a multitude of issues that challenge the calculation of benefits,

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, adopting the findings and recommendations of the Honorable H. David Young, United States Magistrate Judge for the Eastern District of Arkansas.  The matter was originally referred to the Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, now retired. Judge Jones decided several discovery disputes.

penalties, and attorney's fees and costs. The plaintiffs also contend that the magistrate judges abused their discretion in managing discovery and that the district court should have granted nonmonetary relief, including an accounting, the removal of the trustees, and the removal of the defendants' lawyers. We affirm.

## I. Background

The facts set forth below are derived mostly from Judge Young's recommended dispositions and have been confirmed by our independent review of Judge Young's docket citations and by our review of the thirteen volumes of appendix that the plaintiffs have filed with this court. Our recitation of the facts would have been greatly assisted had the briefs included appropriate references to the record. See Fed. R. App. P. 28(a)(7) and 28(b)(4).

In 1974, Bud Price's Excavating Services, Inc. (Price's Excavating), began administering a profit sharing plan (the 1974 plan). The 1974 plan originally allowed all classes of employees to participate, but it was later amended to exclude truck drivers, welders, and laborers. In 1983, Price's Excavating began administering a defined benefit plan that allowed participation by officers, clerical workers, truck drivers, welders, and laborers (the 1983 plan). Bud and Mary Ruth Price (the Prices) served as trustees for both plans. In 1998 or 1999, the two plans' assets were merged, and the plans were thereafter administered as a profit sharing plan (collectively, the profit sharing plan).[2]

In 1997, Price's Utility Contractors, Inc. (Price's Utility), began administering a defined benefit plan (the 1997 plan), with the Prices serving as trustees. With some exceptions, "eligible employee" was defined as an individual employed by Price's Utility. The plan required eligible employees to meet certain age and employment

[2]The Department of Labor found that "in the mid-1990s, all the employees of Bud Price's [Excavating] were terminated[.]"

requirements, and if all requirements were met, participants would receive a percentage of their average annual compensation after they reached normal retirement age. Each year from 1998 to 2002, Price's Utility's board of directors voted to change the percentage of compensation. According to a special consent memorandum by the board of directors, Price's Utility terminated the 1997 plan's benefit accruals on January 1, 2003, and "continue[d] the Plan as a frozen plan."

To establish and administer these plans, the Prices had relied on their attorney, Barry Jewell. Mrs. Price testified that Jewell "prepared all forms and notices required for the plans, and the plans always took whatever action he stated was necessary." It is undisputed that the participants did not receive the notice the plans were required to provide under ERISA.

Jewell was convicted in September 2008 of aiding and abetting tax evasion, in a matter unrelated to the Prices or their businesses. While Jewell's legal problems were mounting, the United States Department of Labor began investigating the profit sharing plan and the 1997 plan. The Prices hired A. Wyckliff Nisbet, Jr., to serve as plan counsel and represent the plans during the investigation.

Nisbet verified the benefits that were due to participants of the profit sharing plan and hired actuary James E. Turpin to calculate the benefits due to the participants of the 1997 plan, which he did. Turpin used 39.25 percent of average annual compensation to determine the benefits owed to participants of the 1997 plan. The board of directors had adopted that percentage in 2002, and it represented the percentage used immediately before the plan was frozen and the lowest percentage the board of directors had approved in the plan's history. Nisbet then notified participants of the amounts distributable to them by the plans. The Department of Labor concluded its investigation in September 2009, finding that the Prices, Price's Excavating, and Price's Utility had taken suitable corrective action.

-4-

In October 2008, eleven former employees[3] and one beneficiary of a former employee filed suit against the Prices, the companies, and the plans. The second amended complaint alleged four counts. The plaintiffs have described their claims as follows: failure to provide annual plan funding statements, failure to provide information to McDowell and Maulding, failure to inform, and a claim seeking equitable relief based on fraudulent concealment and breach of fiduciary duties.[4]

After filing suit, the plaintiffs propounded extensive discovery requests on the defendants and filed multiple discovery motions—many of them frivolous—with the district court. The defendants moved for a protective order, maintaining that they had produced the plans and all information relating to the plaintiffs' interests in the plans with their initial disclosures. Magistrate Judge Henry L. Jones held a hearing on discovery matters, during which two experts testified for the plaintiffs and Nesbit testified for the defense.

Plaintiffs' expert, Scott Fletcher, explained that a profit sharing plan is a defined contribution plan, which is a "qualified retirement plan sponsored by an employer where the contributions are made to the plan each year, and . . . whatever the investment performance for that plan year was, the gain/loss is allocated annually to the participant accounts." Fletcher testified that if he were to calculate the benefits due to participants of the profit sharing plan "from scratch," he would need data for all years relating to the profit sharing plan. He further testified that when he assumes the administration of an established plan, he does not request all plan documents and records but instead begins with an accounting agreement and financials or audited financials. Plaintiffs' counsel had not provided Fletcher with the calculations

_____

[3]One plaintiff withdrew from the action, and plaintiff James Joslin died. Counsel notified the district court of Joslin's death and represented that she would move to substitute Joslin's estate as plaintiff.

[4]Count III seeks both legal and equitable relief. Specifically, the plaintiffs requested a determination of benefits under 29 U.S.C. § 1132(a)(1)(B).

completed by Nesbit's law firm, and he did not know what documents had been used to calculate the benefits.

Plaintiffs' defined-benefits expert David Kays, an actuary, explained that a defined benefit plan sets forth a monthly benefit—typically a percentage of pay—that a participant begins receiving when he reaches retirement age and continues to receive for the remainder of his life. Kays had reviewed the benefits packages that the plaintiffs had received and stated that he could verify Turpin's calculations if he knew the plan's benefit formula and the plaintiffs' payroll information. When asked on cross-examination whether he had reviewed the calculations and formulas used by Turpin and provided to plaintiffs' counsel, Kays responded that he had not and stated that the information had not been provided to him. He thus could not comment on whether the calculations were correct.

Kays noted that under the original plan document for the 1997 plan, a fully vested participant with adequate years of service was entitled to 45 percent of his pay when he reached retirement age. Kays explained that Turpin had used 39.25 percent of the participant's average compensation as the benefits formula, "which is in conflict with the adoption agreement which was 45 percent." Kays also testified that it appeared that the plan was frozen on December 1, 2003, but that it was unclear whether notice was provided to the plan's participants. According to Kays, a plan sponsor has the right to change the plan whenever the sponsor wants, but the plan must be amended and notice must be provided to the plan's participants.

Judge Jones issued a comprehensive order setting forth which documents and information the plaintiffs were entitled to discover and granting, in part, the defendants' motion for a protective order. Approximately two months later, after the matter had been referred to Judge Young and the plaintiffs had filed a motion for contempt for failure to produce documents, Judge Young ordered the defendants to identify certain documents or produce those documents, if they had not already done

so. The defendants identified the documents that already had been produced and further responded that they "ha[d] provided to the plaintiffs all documents in their possession that are relevant to any issue in this action or that were ordered by the Court[.]"

The plaintiffs and the defendants moved for summary judgment in August 2010. In three proposed dispositions,[5] Judge Young recommended that the plaintiffs' motion for summary judgment be granted in part and denied in part and that the defendants' motion be denied. He determined that the following plaintiffs were owed benefits under the profit sharing plan: Kennith McDowell, Robert Maulding, Luther Stripling, Rudy Kyle, James Milner, and Janet Stripling, on behalf of her late husband. He determined that the following plaintiffs were owed benefits under the 1997 plan: McDowell, Maulding, Luther Stripling, Kyle, Fred Dollar, James Joslin, Joe Ellis, Daniel Stripling, and Janet Stripling. And he determined that David Ellis and Joe Ellis had taken lump-sum distributions when they left the employment of Price's Excavating and that they had not presented evidence to show they were entitled to a larger distribution from the profit sharing plan.

Judge Young concluded that the plaintiffs had not presented sufficient evidence to dispute Nisbet's calculations for the profit sharing plan. The plaintiffs had disputed, however, Turpin's calculations for the 1997 plan. Specifically, the evidence showed that the board of directors for Price's Utility had voted annually to change the percentage of compensation and that notice had not been provided to the plan participants. Turpin, however, had used 39.25 percent, the percentage approved immediately before the plan was frozen and the lowest percentage that had been approved in the plan's history. Accordingly, the benefits under the 1997 plan were

---

[5]Findings and Recommendations dated January 10, 2012; March 30, 2012; and September 6, 2012. The district court did not adopt Judge Young's October 13, 2010, Findings and Recommendation, wherein Judge Young recommended that the motions for summary judgment be denied.

recalculated, using 45 percent for 1997 to 1999, 47.5 percent for 1999 to 2000, and 49 percent for 2000 to 2003. Judge Young considered the plaintiffs' allegations that the Prices had misappropriated funds and otherwise engaged in wrongful conduct, but determined that the plaintiffs had failed to set forth evidence to show that the Prices' purported wrongful conduct adversely affected their accounts.

Judge Young also recommended that summary judgment be granted to the plaintiffs on the three counts alleging failure to inform and failure to provide notice.

> [Penalties] should be imposed for the failure of Price's Utility to disclose the funding notices for the 1997 defined benefit plan as alleged in count one, for the failure of both Price's Excavating and Price's Utility to make the mandatory disclosures required by ERISA as alleged in count four, and for their failure to timely respond to the request made by Kennith McDowell and Robert Maulding as partially alleged in count [two].

Findings and Recommendation, Sept. 6, 2012, at 20. After considering the prejudice to the plaintiffs and the administrators' deliberate disregard of their legal obligations, Judge Young determined that Price's Excavating and Price's Utility should pay penalties for failure to provide notice under ERISA. Although the plaintiffs had requested civil penalties totaling more than $878 million, Judge Young recommended far less, finding that the plaintiffs who were entitled to penalties should be awarded amounts ranging from $100 to $5,000. The plaintiffs requested $667,155 in attorney's fees and $25,674.26 in costs. Judge Young found that plaintiffs' attorney had not adequately documented her fees and costs. Moreover, he found that plaintiffs' attorney had spent an unreasonable amount of time on valid endeavors and had also devoted time to frivolous ones. Accordingly, Judge Young recommended that the plaintiffs be awarded $20,625 in attorney's fees and $15,500 in costs. As set forth above, the district court adopted the recommended dispositions. The district court also granted in part the plaintiffs' request for additional attorney's fees and costs, awarding $2,862.75 in fees and $2,400 in costs.

## II. Discussion

On appeal, the plaintiffs contend that the discovery process was mismanaged and that the certain pretrial motions should have been granted. They argue that the district court erred in determining the benefits due to them under the terms of the plans. Moreover, they maintain that the district court should have imposed more severe penalties on the failure-to-inform counts and should have awarded the full amount of attorney's fees and costs.

### A. Discovery and Other Pretrial Motions

The plaintiffs argue that the district court "erred by not enforcing discovery orders, by not compelling discovery responses and erred in not granting participants' discovery motions." Appellants' Br. 63-64. Throughout this litigation, the defendants maintained that they had produced with their initial disclosures the benefit calculations and all documentation relating to the plans for the ten years preceding the initiation of the lawsuit. After they were ordered to do so, the defendants also produced available information relating to the plans and the plaintiffs dating back to 1974. The plaintiffs have not identified any specific documents or discoverable information that they lacked and which prevented them from calculating the benefits due under the plans. Moreover, in the circumstances of this case, we find no impropriety in Judge Young's April 2012 order limiting the motions that he would entertain. Nor do we find any abuse of discretion in Judge Jones's or Judge Young's other rulings on discovery motions. Schaffart v. ONEOK, Inc., 686 F.3d 461, 472 (8th Cir. 2012) (standard of review).

The plaintiffs also argue that the district court should have granted their motions to remove the Prices as trustees of the plans and to require the defendants to retain separate attorneys. Having cited no relevant law in support of their arguments, they have failed to show that the district court erred in denying the motions.

## B. Benefits Due Under the Plans

We review *de novo* the district court's grant of summary judgment. MidAmerican Pension & Emp. Benefits Plans Admin. Comm. v. Cox, 720 F.3d 715, 718 (8th Cir. 2013). Summary judgment is appropriate if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The plaintiffs set forth a number of theories why they are entitled to greater benefits under the plans, but they have failed to set forth sufficient evidence to dispute the benefits calculations adopted by the district court.

The plaintiffs first argue that the district court erred in excluding certain plaintiffs from the plans. Although they contend that all plaintiffs should have been considered participants in all plans, the plaintiffs have not supported their sweeping allegation with relevant citations to the record or the law. More specifically, they argue that David Ellis and Joe Ellis met the 1974 plan's requirements for participation and that Maulding and McDowell met the 1983 plan's requirements for participation. With respect to David Ellis and Joe Ellis, Judge Young determined that "the record indicates that they have indeed received their benefits under the [profit sharing] plan" and that they failed to offer proof that they were entitled to further benefits. It is undisputed that David Ellis and Joe Ellis accepted lump-sum payments after they terminated their employment, and they have not directed us to evidence that shows that they were entitled to additional benefits under the profit sharing plan. With respect to Maulding and McDowell, Judge Young determined that the plaintiffs had not shown evidence that Maulding and McDowell were classified as "officers, clerical, truck drivers, welders, [or] laborers[,]" as the 1983 plan required. They have likewise failed to do so on appeal.

The plaintiffs next argue that the 1983 defined benefit plan remains open because it did not merge with the 1974 profit sharing plan or otherwise terminate. Although it is undisputed that the two plans' assets were consolidated, the plaintiffs

contend that the plans themselves were not merged under ERISA. According to their argument, any such merger would have required the 1983 defined benefit plan to be converted to a defined contribution plan before the plans could be merged with the 1974 plan, and there is no evidence that the 1983 plan was so converted. Assuming, without deciding, the legal and factual validity of this argument, the plaintiffs have not explained how it would affect their benefits calculations. All three plaintiffs who participated in the 1983 plan—David Ellis, Joe Ellis, and the late Royce Stripling—took lump-sum distributions when their employment terminated. As set forth above, the plaintiffs have not shown that David Ellis or Joe Ellis are entitled to additional benefits under the profit sharing plan, and they likewise have not presented evidence to show that Royce Stripling's beneficiary is entitled to benefits beyond those set forth in the district court's order.

The plaintiffs argue that Judge Young erred in determining that the 1997 plan was frozen in 2003. Because the participants had not received proper notice, the argument goes, the amendment freezing the plan was void and benefits should have continued to accrue. See 29 U.S.C. § 1054(h)(1) (providing that a plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides [notice]"). Again, even if the plaintiffs are correct, they have not shown which plaintiffs were affected by the 2003 plan freeze or what the additional benefits should be.

The plaintiffs ultimately contend that the defendants' experts' calculations of benefits are erroneous. They argue that "neither the Court nor the Prices spent so much as one word attacking Participants' dissection of the Jewell/Nisbet/Turpin math—not a word." Appellants' Br. 25. Again, the plaintiffs failed to present evidence to dispute Nisbet's and Turpin's calculations of benefits and did not submit evidence setting forth the amounts that they believed were correct. Similarly, although they contend that certain distributions to the Prices were improper, the plaintiffs have not submitted evidence to show that those distributions adversely

affected their accounts. And while they dispute Judge Young's characterization of the calculations as an accounting, they have offered no proof that the calculations were wrong.

The plaintiffs argue that their experts, Kays and Fletcher, opined "that the documents provided by the Prices were insufficient to calculate a benefit under any plan[.]" Appellants' Br. 39. Both experts testified, however, that plaintiffs' attorney did not provide them with the documents that the defendants had produced in support of Nisbet's and Turpin's calculations. Accordingly, if the plaintiffs' argument is that their experts could not calculate the benefits due under the plans or otherwise dispute Nisbet's and Turpin's calculations, the record does not support it.

## C. Penalties

Under 29 U.S.C. § 1132(c), a court may award monetary damages against a plan administrator for failure to comply with certain notice requirements under ERISA. "The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA, and to punish noncompliance[.]" Starr v. Metro Sys., Inc., 461 F.3d 1036, 1040 (8th Cir. 2006) (internal citations omitted). In determining penalties, "a court primarily should consider 'the prejudice to the plaintiff and the nature of the plan administrator's conduct.'" Id. (quoting Kerr v. Charles F. Vatterott & Co., 184 F.3d 938, 948 (8th Cir. 1999)). We review the district court's decision to impose penalties for an abuse of discretion. Id.; Brown v. Aventis Pharms., Inc., 341 F.3d 822, 825 (8th Cir. 2003).

The plaintiffs did little to help Judge Young determine what penalties would be appropriate. They requested $878 million in penalties, arguing that the defendants should pay penalties ranging from $24 million to $160 million to each plaintiff. The plaintiffs submitted a handwritten worksheet that seemed to apply a $100 or $110 penalty per day per purported violation. According to the plaintiffs, the defendants

were "required to produce all of the documents in 29 U.S.C. [§] 1021 *et seq.* over all years from 1974 forward to the present for all plans . . . with no action whatsover required on the part of [the] [p]laintiffs." The plaintiffs did not address whether ERISA's notice requirements had changed since the 1974 plan's inception and how those changes might affect the penalties determination.

As Judge Young noted, ERISA does not require disclosure of all information the plaintiffs claimed should have been disclosed, but instead requires plan administrators to disclose certain information without a request and certain information upon request.[6] The plaintiffs argue that they were not required to identify each notice violation, but without their help, Judge Young was left to determine whether penalties should be imposed and then weigh the prejudice to the participants and the nature of the plan administrators' compliance to determine the appropriate penalties, which he did. We find no abuse of discretion in the decision to impose the penalties set forth in the Findings and Recommendation dated September 6, 2012.

D. Attorney's Fees and Costs

Title 29, United States Code, Section 1132(g)(1) provides that for "any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Fees may be awarded "as long as the fee claimant has achieved some degree of success on the merits[.]" Hardt v. Reliance Standard Life Ins. Co., 130 S. Ct. 2149, 2152 (2010) (internal quotation omitted). Our case law sets forth a nonexhaustive list of factors to consider, see Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984) (per curiam), and we review for abuse of discretion the award of attorney's fees and costs. Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1072 (8th Cir. 2000).

---

[6]Only McDowell and Maulding requested plan information in writing.

The plaintiffs initially requested $667,155 in attorney's fees, representing 2,223.85 hours of work at a rate of $300 per hour. After considering the culpability of the defendants, the extent of the plaintiffs' success, and the relative merits of the parties' positions, Judge Young determined that the amount requested should be reduced substantially. Judge Young then reviewed ERISA cases from the Eastern and Western Districts of Arkansas and found that attorneys had requested an hourly rate between $165 and $275 and had been awarded between $8,251 and $23,511. Judge Young found that the documentation in support of attorney's fees was inadequate, that "a number of entries appear to be associated with frivolous work[,]" and that plaintiffs' attorney "devoted an unreasonable amount of time to legitimate endeavors[.]" Findings and Recommendation, Sept. 6, 2012, at 34. Judge Young ultimately recommended that plaintiffs' attorney should be paid $20,625 in attorney's fees, representing $165 per hour for 125 hours of work. Judge Young also found inadequate the documentation offered in support of the plaintiffs' request for $25,674.26 in costs and recommended that the defendants be ordered to pay $15,500, which represented $14,000 in costs associated with depositions and expert witnesses, $1,000 in copying costs, and $500 in postage. The district court adopted the recommendations.

The plaintiffs filed a second motion for attorney's fees and costs to cover the time period from the date the first motion was filed to the date the district court adopted Judge Young's findings and recommendations. The plaintiffs sought an additional $29,295 in attorney's fees and $2,906.60 in costs. After careful consideration, the district court ordered the defendants to pay $2,862.75 in attorney's fees, representing $165 per hour for 17.35 hours of work, and $2,400 in costs.

We find no abuse of discretion in the award of attorney's fees and costs. Judge Young thoroughly reviewed the plaintiffs' initial request, the record, and awards in similar cases and determined a reasonable attorney's fee. Likewise, the district court

carefully considered the plaintiffs' second request, setting forth the amount of time that was compensable and the amount of costs that were adequately documented.

## III.  Conclusion

The plaintiffs have failed to set forth sufficient evidence to show that they are due more in benefits and penalties than the amount that the district court determined that they are owed.  The district court did not abuse its discretion in denying their requests for nonmonetary relief or in determining the reasonable attorney's fees and costs.  The judgment is affirmed.

_____