# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3110

_____

International Union, United Automobile, Aerospace and Agricultural
Implement Workers of America, AFL-CIO, and UAW Local 716

*Plaintiffs - Appellants*

v.

Trane U.S. Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith

_____

Submitted: September 25, 2019
Filed: January 10, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

In February 2017, Trane U.S. Inc. ("Trane") announced that it would close its manufacturing plant in Fort Smith, Arkansas. After discussions, Trane and Local 716 of the United Automobile Workers ("the Union") signed a Memorandum of Agreement extending the four-year collective-bargaining agreement ("CBA") that governed terms and conditions of plant employment to the earlier of the plant's

closing or April 1, 2019.  In May 2017, the Union submitted two grievances regarding early retirement benefits for employees terminated as the result of the plant closing.  Trane denied the grievances, refused to submit them to arbitration, and the Union filed this suit to compel arbitration or, in the alternative, to enforce the CBA's substantive terms.  The plant closed on July 28, 2017, but any duty to arbitrate did not expire with the CBA.  See Garland Coal & Mining Co. v. United Mine Workers, 778 F.2d 1297, 1303 (8th Cir. 1985).  The Union now appeals the district court's order denying the Union's motion to compel arbitration of the grievances.  Reviewing the denial of a motion to compel arbitration *de novo*, we affirm in part, reverse in part, and remand.  IBEW v. GKN Aerospace N. Am., Inc., 431 F.3d 624, 626-27 (8th Cir. 2005) (standard of review).[1]

## I. Governing Arbitrability Principles.

The Union filed this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the CBA and, as is common, sought an order compelling Trane to arbitrate two unresolved grievances.  Trane argues the CBA's arbitration provisions exclude these grievances.  The principles we apply in deciding whether to compel arbitration are well established:

> (1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties provide otherwise, courts decide the issue of whether the parties agreed

[1]The parties voluntarily dismissed the Union's alternative breach of contract claim before appealing the order denying the motion to compel arbitration.  We have frequently criticized efforts to manufacture final order appellate jurisdiction.  See Clos v. Corr. Corp. of Am., 597 F.3d 925, 928 (8th Cir. 2010).  However, in this case we are satisfied that we would have jurisdiction over an interlocutory appeal under Section 16(a) of the Federal Arbitration Act, 9 U.S.C. § 16(a).  See IBEW v. Pub. Serv. Co. of Colo., 773 F.3d 1100, 1106-07 (10th Cir. 2014); Pryner v. Tractor Supply Co., 109 F.3d 354, 359 (7th Cir. 1997).

to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.

Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc., 186 F.3d 878, 881 (8th Cir. 1999), citing AT & T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-50 (1986).

The presumption of arbitrability does not "override[] the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit." The presumption applies "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties [to a CBA] intended." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 302-03 (2010) (quotation omitted). A particular grievance is excluded from arbitration "(1) where the collective bargaining agreement contains an express provision clearly excluding the grievance involved from arbitration; or (2) where the agreement contains an ambiguous exclusionary provision and the record evinces the most forceful evidence of a purpose to exclude the grievance from arbitration." UAW v. Gen. Elec. Co., 714 F.2d 830, 832 (8th Cir. 1983) (quotation omitted); see United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

The Union seeks to arbitrate grievances over the denial of two benefits the CBA allegedly required Trane to provide to eligible employees after plant closure, a "bridge" benefit and a temporary pension supplement benefit. The CBA is a lengthy, complex contract. As will become clear, the grievances alleged violations of two very different CBA provisions. Accordingly, we will separately address the arbitrability of each grievance.

## II. The Bridge Benefit.

The Complaint alleged that the parties agreed in Article XX of the CBA that a laid-off worker would have one year to commence his or her pension without a break in service, avoiding considerable reductions to his or her monthly pension payments. The provisions of Article XX, entitled "Job and Income Security," governed the "severance pay" that an eligible employee was entitled to receive if "employment is terminated because of plant closing." In the Memorandum of Agreement extending the CBA until the Fort Smith plant closed, Trane expressly agreed that it would "follow the terms and conditions in Article XX with regards to . . . severance pay." The Complaint alleged that Trane nonetheless refused to comply with the "bridge" benefit provided in Article XX, Section 2(b)(3) (¶ 166):

> (3) An eligible employee who will become eligible for optional retirement under the Pension Plan within one year [from termination because of plant closing] and who meets the conditions specified in Sub-paragraphs (i), (ii) and (iii) of Subsection (b)(1), may receive any Severance Pay to which he is entitled under Section 2, and later elect optional retirement when he reaches optional retirement age. His service would be protected until such age.

Article XIV, Section 1 (¶ 144) of the CBA provided that "[a]ny grievance which involves the interpretation or application of this Agreement and which remains unsettled after having been fully processed . . . shall be submitted to arbitration upon written request of the Union." The Complaint alleged that Trane's refusal to provide the bridge benefit violated Article XX, Section 2(b)(3), and that the dispute is arbitrable under Article XIV, Section 1.

Trane denied the grievance on the ground that an employee laid-off by the plant closure could (1) elect to receive severance and continued medical benefits, in which case employment was terminated, or (2) elect lack-of-work status, continue to accrue

-4-

service, and receive the bridge benefit if he or she later elected optional (early) retirement. All affected employees chose to take severance and continued medical benefits, so they were not eligible for the bridge benefit. As the bridge benefit was part of the Merged Hourly Pension Plan for Fort Smith hourly employees (the "Plan"), which was not collectively bargained, Trane took the position that this grievance was excluded from arbitration by Article XIV, Section 2(b), of the CBA:

> It is further specifically agreed that no arbitrator shall have any authority in questions involving . . . the establishment, administration, interpretation or application of any Company pension or insurance plan, except for agreed-upon benefit levels . . . .

On appeal, the parties focus their appellate arguments on whether the district court correctly interpreted the term "agreed-upon benefit levels" and in particular the undefined word "levels." We conclude the bridge benefit claim does not require us to resolve that issue. See 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) ("Our task is to look past the labels the parties attach to their claims . . . and determine whether they fall within the scope of the arbitration clause."). The bridging grievance, on its face, stated a claim that Trane violated a specific provision of the CBA by not providing a *bargained-for* benefit, a benefit Trane reconfirmed in the Memorandum of Agreement. Although the claim affects access to and the timing of retirement benefits that are part of the Plan, in Article XX of the CBA the parties bargained the manner in which the normal Plan benefits would be affected by a plant shutdown. This grievance does not involve the interpretation of the Plan excluded from arbitration by Article XIV, Section 2(b). It involves the interpretation of Article XX, Section 2(b)(3), of the CBA and thus is arbitrable under Article XIV, Section 1. This is confirmed by Trane's grievance response to the Union's local chairman: "Article XX, Section 2. Paragraph 166(b)(3) is language that 'protects' service, i.e., preserves service. The language does not grant additional service."

Plant shutdown and severance pay disputes are routinely covered by a CBA's broad arbitration clause. See Local 198, United Rubber Workers v. Interco, Inc., 415 F.2d 1208, 1210-11 (8th Cir. 1969). In these circumstances, even if the interplay between Article XX of the CBA and Trane's Plan makes the exclusion in Article XIV, Section 2(b), arguably ambiguous, we cannot conclude that "the record evinces the most forceful evidence of a purpose to exclude the [bridge benefit] grievance from arbitration." Gen. Elec., 714 F.2d at 832. In making this decision, we of course do not consider the merits of Trane's contrary interpretation of Article XX, Section 2(b)(3). That is the task of the arbitrator.

### III. The Temporary Pension Supplement Benefit.

The Complaint alleged "that the parties agreed in collective bargaining that workers who commence their pension payments before age 60 have the right to receive a [pension] supplement once they turn 60," an agreement "incorporated by reference in Article XXVI of the [CBA and] set forth in the amended language in the Summary Plan Description." The Complaint alleged that Trane "disagreed with UAW's position" and sought arbitration of the issue.

Article XXVI of the CBA is entitled "Issues of General Application." In Article XXVI, Section 1 (¶ 202), the parties agreed:

> This Agreement, the 2013-2017 Settlement, the 2013-2017 Wage Agreement and the 2013-2017 Pension and Insurance Agreement . . . are intended to be and shall be in full settlement of all issues which were the subject of collective bargaining negotiations in 2013. Consequently, it is agreed that none of such issues may be reopened or otherwise made the subject of collective bargaining during the term of this Agreement and there shall be no strike or lockout in connection with any such issue or issues.

In the above-referenced Pension and Insurance Agreement ("PIA"), Trane and the Union agreed "to accept" during the term of the PIA the pension benefits set forth in the Plan. The Plan was not collectively bargained and is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1003 *et seq*. Neither the terms of the PIA nor Article XXVI of the CBA made the Plan itself part of the CBA. Therefore, cases holding arbitrable disputes over CBA terms that incorporated ERISA plan terms do not govern whether this dispute is arbitrable under Article XIV of the CBA. See, e.g., United Steelworkers v. Phillips 66 Co., 839 F.3d 1198 (10th Cir. 2016) (failure to comply with CBA agreement to pay 80% of plan premiums).

The PIA was a side agreement that was not made an appendix to the CBA. As a side agreement, the PIA's terms must be addressed to determine whether disputes under the PIA are covered by the CBA's arbitration provisions. See United Steelworkers v. Duluth Clinic, 413 F.3d 786, 789-90 (8th Cir. 2005). In the PIA, Trane agreed "to accept the benefits as and to the extent described" in the attached Plan documents during the term of the PIA. Article XXVI of the CBA incorporated that agreement, making disputes over whether Trane breached the PIA by unilaterally modifying Plan benefits arbitrable under Article XIV, as other courts have held in comparable cases. See Bakery Workers Local Union No. 362-T v. Brown & Williamson Tobacco Corp., 971 F.2d 652, 655 (11th Cir. 1992).

In this case, the Union's Complaint alleged that Trane refused to provide a temporary pension supplement benefit "set forth in the amended language in the Summary Plan Description." The Summary Plan Description ("SPD") is a Plan document whose interpretation and relationship to the Plan terms it summarizes are governed by ERISA, not by the Labor Management Relations Act. See 29 U.S.C. §§ 1022, 1024(b)(2); Jobe v. Med. Life Ins. Co., 598 F.3d 478, 481-86 (8th Cir. 2010). Although the SPD alleged in the Complaint contained a description of the temporary early retirement supplement benefit provided in the Plan, Attachment 1 to

the PIA was an abbreviated version of the Plan SPD, described as a "Summary of Pension Plan Components." Thus, the Union's claim as pleaded was not based on the CBA *or* on the PIA and its attachments. It was based on a Plan document, the SPD, not on the collectively bargained CBA and PIA.

The PIA expressly provided that "the terms of insurance and pension benefits are governed by the terms of the actual plan document, Summary Plan Description or insurance policy, and not this Agreement." More importantly, Paragraph 5 of the PIA expressly excluded this type of dispute from arbitration under the CBA:

> *The eligibility of employees and their rights to benefits are fixed by the respective employee benefit plans*. Covered employees shall look to such plan documents or insurance policy and to the Summary Plan Descriptions issued to each covered employee regarding all rights to benefits, payments and appeals to claims. *Questions regarding claims or the administration of the plan shall not be subject to the provisions of Article XII and XIV of the Labor Agreement*.

This exclusion is more focused and less ambiguous than the more general exclusion in Article XIV, Section 2(b), of the CBA. And it is controlling because, quite logically as a matter of contract interpretation, "parties may exclude disputes arising under a side agreement from arbitration should they include a statement to that effect in the arbitration clause of the CBA *or in the side agreement itself*." United Steelworkers v. Cooper Tire & Rubber Co., 474 F.3d 271, 279 (6th Cir. 2007) (emphasis added; citation omitted). Here, Trane and the Union agreed to an unambiguous express exclusion in Paragraph 5 of the PIA. Therefore, their dispute over the proper interpretation of the temporary early retirement supplement benefit in Trane's Plan is not arbitrable under Article XIV of the CBA. This dispute must be resolved under the exclusive remedial provisions mandated by ERISA. See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.

For the foregoing reasons, the order of the district court denying the Union's motion to compel arbitration of the bridge grievance is reversed; the order denying the Union's motion to compel arbitration of the temporary pension supplement benefit grievance is affirmed; and the case is remanded for such further proceedings not inconsistent with this opinion as may be appropriate.

COLLOTON, Circuit Judge, concurring in the judgment in part and dissenting in part.

According to the Union, "[t]his case turns on four words: the parties' agreement to arbitrate pension disputes over 'agreed-upon benefit levels.'" Appellant's Br. 9. The company, Trane U.S., agrees: "The Union correctly states that this case turns on four words: 'agreed-upon benefit levels.'" Appellee's Br. 21. The court, however, declines to resolve the issue decided by the district court and presented by the parties. The opinion instead advances interpretations and applications of agreements that were not argued by the parties or addressed by the district court. On the view that "appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them," *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.), I would decide the question presented and affirm the order and judgment of the district court.

The Union brought this action to compel arbitration over two grievances with the company. The collective bargaining agreement between the parties provides in Article XIV, § 2(b), that "no arbitrator shall have any authority in questions . . . involving the establishment, administration, interpretation or application of any Company pension plan or insurance plan, except for agreed-upon benefit levels." The district court concluded that both grievances involve the "application" of a company pension plan. R. Doc. 29, at 5. The parties do not dispute this conclusion on appeal, and neither does the court in so many words. (The court says only that the first grievance does not involve "interpretation" of a pension plan.) Rather, the parties

-9-

accept that the grievances involve "application" or "administration" of the pension plan, and join issue on whether the disputes concern "agreed-upon benefit levels" such that they are subject to arbitration.

The district court ruled that the grievances do not involve "agreed-upon benefit levels" within the meaning of this agreement. Both grievances concern whether employees are eligible to receive certain benefits—an early retirement supplement or subsidized early retirement payments based on an extra year of service credit after a plant closure. The district court reasoned that in benefits plan administration, an administrator generally must make only two determinations: whether a claimant is eligible for a benefit and, if so, in what amount. The court rejected the Union's position that the two eligibility disputes in this case involved "agreed-upon benefit levels," because it "would encompass the entirety of plan administration and allow the reservation to swallow the exclusion." R. Doc. 29, at 5.

The district court arrived at the better reading of the disputed provision. A "benefit level" is different from a "benefit right." The term "level" is narrower and more specific; one court aptly observed that "it is hard to construe a 'level' as anything other than a particular monetary benefit supplied by the Company." *Kennametal Inc. v. United Steelworkers*, 262 F. Supp. 2d 663, 669 (W.D. Va. 2003). "Benefit levels" does not include the discrete question of eligibility for a benefit in the first place.

The two grievances at issue in this case concern eligibility for benefits. They address whether and, if so, when certain employees are eligible to receive a benefit under the pension plan. They do not concern particular amounts or "levels" of benefits provided to eligible employees under the early retirement provisions of the pension plan. As such, the grievances do not involve a claim about "agreed-upon benefit levels," and they are not subject to arbitration under Article XIV, § 2(b) of the collective bargaining agreement.

-10-

The court's decision to venture beyond the issue decided in the district court and presented by the parties on appeal unnecessarily raises the potential for error or unintended consequences. Proceeding without the "assistance of counsel which the system assumes," *Carducci*, 714 F.2d at 177—that is, without briefing and argument on the questions decided—not only raises questions about "altering the character of our institution," *id*., but also "entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharm., Inc.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986). The court's authority to "look past the labels the parties attach to their claims . . . and determine whether they fall within the scope of the arbitration clause," *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008), is not a general license to raise arguments not advanced by the parties in arbitration cases. It is a more modest duty to consider whether the substance of a plaintiff's claims, however labeled, falls within the scope of an arbitration clause when the defendant so argues. *Id*. at 1198-99 (accepting 3M's argument that the "arbitration clause is broad, . . . and that all of Amtex's claims come with the scope of Article 4D").

On the first grievance in this case, the court reverses the district court based on an application of Article XIV of the collective bargaining agreement that the Union did not seek. The court applies the general arbitration provision of Article XIV, § 1, and apparently rejects *sub silentio* the parties' agreement that these grievances involve application or administration of the pension plan, and are thus excluded from arbitration under the more specific provision of Article XIV, § 2(b)—unless they involve "agreed-upon benefit levels." On the second grievance, the court affirms the refusal to compel arbitration, but goes beyond the company's position by declaring that Paragraph 5 of the Pension and Insurance Agreement precludes arbitration of claims involving administration of the pension plan, without regard to whether the claims involve "agreed-upon benefit levels." Although neither party sought these determinations, the contractual relationship is now governed by the rulings.

Even if the parties might have overlooked or eschewed promising arguments in favor of their positions, there is no good cause for the court to raise new issues in this case. The ultimate question is only whether the Union is entitled to compel arbitration of two particular grievances. Arbitration is strictly a matter of contract. No statute or common law rule by itself requires that these grievances be arbitrated. "Parties can waive their contractual right to arbitration even if their agreement to arbitrate is valid and enforceable." *Schultz v. Verizon Wireless Servs., LLC*, 833 F.3d 975, 978 (8th Cir. 2016). A decision resolving the question presented—whether these grievances involve "agreed-upon benefit levels" within the meaning of this agreement—would not foreclose either party from advancing a different ground for arbitration in future proceedings. But a decision rendered *sua sponte* about other complex contractual provisions fixes the meaning of the agreements without input from the parties, and perhaps even contrary to the parties' shared understanding of their own agreements. I would limit our consideration to the question presented and affirm the judgment.

_____