# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2200
_____

National Nurses Organizing Committee-Missouri & Kansas/National Nurses United

*Plaintiff - Appellee*

v.

Midwest Division-RMC, LLC, doing business as Research Medical Center

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 12, 2022
Filed: February 17, 2022
_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

After Midwest Division-RMC, LLC (RMC), implemented new staffing grids for registered nurses at its acute-care hospital, the National Nurses Organizing Committee-Missouri & Kansas (Union) filed a grievance under the parties' collective bargaining agreement (CBA) and later sought arbitration. RMC refused to process the grievance, claiming that the CBA did not cover the Union's allegations of wrongdoing. The Union thereafter filed a complaint in federal district court, seeking

to compel arbitration. Ruling on the parties' cross-motions for summary judgment, the district court[1] granted the Union's motion, denied RMC's, and ordered arbitration. We affirm.

The CBA defines "grievance" as "[a]n alleged breach of the terms and provisions of this Agreement." The CBA sets forth the process for submitting grievances to RMC and provides that if the grievance is not resolved by the parties, "the Union may advance the grievance to arbitration." Article 38(1)(F) exempts from arbitration certain disputes.

RMC implemented new staffing grids in June 2020. The Union filed a grievance on July 15 for an alleged violation of Article 3 of the CBA, entitled "Bargaining Unit Work." The grievance alleged that "the hospital intends to displace bargaining unit (BU) RNs [with] supervisory RNs in the performance of BU work as expressed in the hospital's staffing grids" that were implemented in June 2020 and that "removed RNs in the BU." The Union requested that RMC "cease + desist from utilizing these staffing grids," "[h]old staffing committee per the CBA & amend the proposed grids to conform [with] the CBA," and "[r]eturn the RNs [RMC] ha[s] removed." After RMC refused to process the grievance or arbitrate, the Union filed this lawsuit.

We review *de novo* a district court's decision to grant summary judgment and compel arbitration. Crown Cork & Seal Co. v. Int'l Ass'n of Machinists, 501 F.3d 912, 914 (8th Cir. 2007). We apply the following principles in deciding whether to compel arbitration:

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

(1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties provide otherwise, courts decide the issue of whether the parties agreed to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.

UAW Loc. 716 v. Trane U.S. Inc., 946 F.3d 1031, 1033 (8th Cir. 2020) (quoting Teamsters Loc. Union No. 688 v. Indus. Wire Prods., Inc., 186 F.3d 878, 881 (8th Cir. 1999)). The parties agree that they are bound by the CBA's arbitration provision. The issue before us is whether the grievance alleged a subject matter subject to that provision. See Int'l Ass'n of Bridge, Struct., Ornamental, & Reinforcing Ironworkers, Shopman's Loc. 493 v. EFCO Corp. & Constr. Prods., Inc., 359 F.3d 954, 956 (8th Cir. 2004) (stating that it is for the court to decide "whether a valid arbitration agreement applies to the subject matter at hand").

The Union maintains that the grievance alleges a dispute over "the performance of bargaining unit work by supervisory employees." Article 3, entitled "Bargaining Unit Work," states: "It is not the intent of the Hospital to displace bargaining unit employees with supervisory employees in the performance of bargaining unit work." The Union points to the grievance's allegations that RMC violated Article 3 and that RMC intended to displace bargaining unit registered nurses with supervisory registered nurses "in the performance of BU work."

RMC contends that the grievance effectively challenges the hospital's staffing plans, which are not subject to arbitration under the terms of the CBA. RMC points to the grievance's allegations about "the hospital's staffing grids" and to its request that RMC "cease + desist" its use of the grids and amend the grids to conform with the CBA. Article 38, entitled "Staffing Committee," Section (1)(F), states that

disagreements between RMC and the Union "regarding issues covered by this Article, including disagreements related to staffing plans and the methods to monitor compliance with the plans, that cannot be resolved mutually by the parties shall not be subject to the grievance and arbitration procedures of this Agreement." RMC contends that this excludes "**all** disputes concerning or even just 'relating to' hospital staffing plans" from arbitration. Moreover, RMC asserts that Article 19 reserves to RMC several "sole, exclusive, and unilateral rights" related to staffing, disputes over which the CBA exempts from the arbitrator's power.

Even assuming the dispute relates to staffing plans, we conclude that it is not covered by Article 38 and thus is subject to the CBA's grievance and arbitration procedures.[2] Article 38 establishes a Nurse Staffing Committee, the goal of which is "to review, monitor and, where appropriate adjust the applicable Nurse-to-patient staffing levels set forth in the Hospital Staffing Plan for Nurses." Article 38 explains that "the Hospital's Staffing Plan provides the basis for acuity based staffing decisions within the Hospital by providing guidance on Nurse-to-patient staffing levels for staffing coverage in patient care units at the Hospital." Article 38 further explains what constitutes a deviation from the Plan, how the Staffing Committee functions, and how disputes over staffing levels must be resolved. Read as a whole, Article 38 addresses nurse-to-patient staffing levels and establishes the means to monitor and resolve disputes regarding those staffing levels. It does not address the subject matter of this dispute, *i.e.*, which nurses perform the work or the displacement of bargaining unit nurses. Article 38(1)(F)'s reference to "disagreements related to staffing plans" relates only to staffing-plan disputes that fall under "issues covered

---

[2]We do not find persuasive RMC's cited case that raised a similar grievance. See Nat'l Nurses Org. Comm.-Mo. & Kan. v. Midwest Div.-MMC, LLC, No. 2:20-CV-2571, 2021 WL 3376415 (D. Kan. July 16, 2021). The court determined that, compared to the CBA before us, the collective bargaining agreement before it "appear[ed] to further limit and exclude certain disputes from arbitration." Id.

-4-

by" Article 38. Because the grievance alleges displacement of bargaining unit nurses, which is covered by Article 3, and not issues related to nurse-to-patient staffing levels, which are covered by Article 38, Article 38(1)(F)'s arbitration exemption does not apply. Article 19 does not alter this analysis.

We do not accept RMC's argument that compelling arbitration will nullify Articles 38 and 19. Those provisions create an arbitration exemption that is simply narrower than RMC would like. Moreover, adopting RMC's position would render Article 3 of no effect. See MidAmerican Pension & Emp. Benefits Plan Admin. Comm. v. Cox, 720 F.3d 715, 719 (8th Cir. 2013) (explaining that "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect" (quoting Restatement (Second) of Contracts § 203(a) (1981))).

RMC also argues that the district court failed to determine whether the grievance met the CBA's definition of grievance or its requirements for arbitration under Articles 2 and 14. RMC contends that only allegations of actual breaches are arbitrable and that because the Union used the phrase "intends to," it did not allege an actual breach of the CBA. Assuming that the Union must allege an actual breach, we conclude that it has adequately done so. Compare Article 3 ("It is not the intent of the Hospital to displace bargaining unit employees with supervisory employees in the performance of bargaining unit work.") with grievance ("Currently + ongoing the hospital intends to displace bargaining unit (BU) RNs w/ supervisory RNs in the performance of BU work"). It is undisputed that RMC implemented the changes more than two weeks before the Union filed its grievance. The grievance specifically alleged that the staffing grids had "removed RNs in the BU." We thus conclude that the grievance alleged an actual breach.

We decline to consider RMC's argument that Article 38 covers the issue of which nurses perform the work, which it raised for the first time in its reply brief. See

-5-

Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("This court does not consider issues raised for the first time on appeal in a reply brief 'unless the appellant gives some reason for failing to raise and brief the issue in his opening brief.'" (quoting Neb. Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 421 n.5 (8th Cir. 2005))).

The judgment is affirmed.

_____